PEOPLE v RAPER

Docket No. 193491. Submitted March 5, 1997, at Detroit. Decided April 1,
1997, at 9:00 A.M.

Tony E. Raper, II, was convicted by a jury in the Monroe Circuit
Court, Michael W. LaBeau, J., of first-degree murder, carjacking,
and possession of a firearm during the commission of a felony. The
defendant had twice confessed shooting an acquaintance to death
and taking the automobile that the acquaintance had been driving.
The defendant appealed.

The Court of Appeals *held*:

1. The defendant's first confession, made in conversation with
police officers as the officers were transporting him from Mus-
kegon to Monroe County for police questioning, was not made in
response to interrogation. The absence of warnings required by
*Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694
(1966), before the confession does not render the confession inad-
missible evidence, and the trial court correctly refused to suppress
evidence of the first confession. The defendant's second confes-
sion, made after *Miranda* warnings were given, is not "fruit of the
poisonous tree" in light of the validity of the first confession.

2. A person who by force or violence takes a motor vehicle from
another person, in the presence of that person, is guilty of carjack-
ing. The trial court correctly refused to quash the information
against the defendant with respect to the charge of carjacking and
refused to grant a directed verdict with regard to that charge on
the asserted ground that the automobile was not taken from the
presence of the victim. For purposes of the carjacking statute, an
automobile is taken in the presence of the victim where the auto-
mobile is within the victim's reach, inspection, observation, or con-
trol and the victim could, if not overcome by violence or prevented
by fear, retain possession of the automobile. In this case, a rational
trier of fact could find that the victim had control over the vehicle
before the defendant's act of violence and that, but for the defend-
ant's act of violence, the victim would have retained control over
the automobile.

3. Trial counsel's failure to request jury instructions for voluntary
and involuntary manslaughter does not constitute ineffective assis-

tance of counsel in view of the jury's rejection of second-degree murder, for which instructions were given.

Affirmed.

1. CRIMINAL LAW — POLICE INTERROGATION — MIRANDA WARNINGS.

Interrogation for purposes of *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966), refers to express questioning and to any words or actions on the part of the police that the police should know are reasonably likely to elicit an incriminating response from the subject.

2. CRIMINAL LAW — CARJACKING.

An automobile is taken from the presence of a victim so as to constitute carjacking where the automobile is within the victim's reach, inspection, observation, or control and the victim could, if not overcome by violence or prevented by fear, retain possession of the automobile (MCL 750.529a; MSA 28.797[a]).

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *Edward F. Swinkey*, Prosecuting Attorney, and *Michael G. Roehrig*, Assistant Prosecuting Attorney, for the people.

*Laurel Stuart-Fink*, for the defendant on appeal.

Before: DOCTOROFF, P.J., and MICHAEL J. KELLY and YOUNG, JJ.

DOCTOROFF, P.J. Following a jury trial, defendant was convicted of first-degree murder, MCL 750.316; MSA 28.548, carjacking, MCL 750.529a; MSA 28.797(a), and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). For the convictions of first-degree murder and carjacking, he was sentenced to concurrent terms of life imprisonment. For the felony-firearm conviction, he was sentenced to two years' imprisonment to be served consecutively to the sentences of life imprisonment. Defendant now appeals his convictions. We affirm.

On July 15, 1995, the body of Raymond "Lurch" Jablonski was found on the top of a steep hill in a secluded cement quarry in Monroe County. The cause of death was two bullet wounds from a weapon fired at close range. According to the autopsy, death occurred approximately two days before the body was found. On July 16, 1995, defendant and another individual, Mark Mexicott, were taken into custody by police in the City of Muskegon, Michigan. Two detectives from the Monroe County Sheriff's Department drove a police car to Muskegon and retrieved defendant. While riding in the back of the police car en route to Monroe County, defendant confessed to shooting Raymond Jablonski and taking his automobile.

According to defendant's confession, in the early hours of July 13, 1995, Jablonski was driving his sister's 1987 Blazer with defendant and Mexicott as passengers. Outside the presence of Jablonski, Mexicott told defendant that they were going to kill Jablonski and take his car. In furtherance of this plan, Mexicott convinced Jablonski to drive to a secluded area. When they arrived and got out of the car, Mexicott told defendant to bring the gun that was in the Blazer. The three walked up a hill, and, out of Jablonski's hearing, Mexicott told defendant to "just take him out." When defendant said, "I can't do it," Mexicott replied, "well, I'll kill you." Defendant then went to where Jablonski was standing and shot him twice. Defendant and Mexicott then went to the Blazer, which was several hundred yards away. After discovering that the keys were not in the automobile, they returned to the body of Jablonski to retrieve the keys. As defendant drove the Blazer, Mexicott disassembled

the gun and discarded its parts out the car's window at various locations. Following the shooting, defendant and Mexicott fled to Muskegon, where they were taken into custody on July 16, 1995. Soon thereafter, the Monroe County Sheriff's Department sent two detectives to bring defendant back to Monroe County.

Upon their arrival in Monroe County, defendant took the detectives to the location of the shooting, and showed them where the gun had been discarded. Defendant was then taken to the police station, where he gave a recorded confession that was essentially the same as his first statement. Defendant explained that the reason for shooting Jablonski was to obtain the Blazer.

On appeal, defendant first claims that his confession while riding in the back of the police car was the result of a custodial interrogation, before which he was not read his Miranda[1] rights. Defendant thus contends that his confession should have been suppressed. Defendant further contends that his subsequent confession would not have occurred if not for the earlier, tainted confession. He thus contends that his second confession should also have been suppressed as the "fruit of the poisonous tree." We disagree.

Before trial, defendant moved to suppress his confessions, arguing that they were not voluntarily given. At the Walker[2] hearing, the trial court denied defendant's motion, finding that defendant's confessions were freely and voluntarily given. At trial, defendant again moved to have his confessions suppressed,

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

[2] *People v Walker*, 374 Mich 331, 338; 132 NW2d 87 (1965).

arguing that they were solicited before he was given his *Miranda* warnings. In denying this motion to suppress, the trial court found that defendant's inculpatory statement was voluntary and spontaneous, and did not occur during an interrogation.

The failure to give *Miranda* warnings to a person before the person makes a statement during a custodial interrogation renders the statement inadmissible for purposes other than impeachment. *People v Anderson*, 209 Mich App 527, 531; 531 NW2d 780 (1995). Because defendant was handcuffed in the backseat of a moving police car when he made his inculpatory statement, there is little question that he was in custody when it was made. Defendant, however, appeals the trial court's finding that he was not interrogated by the detectives in the police car. He argues that a custodial interrogation occurred and thus the *Miranda* warnings were necessary to obtain a valid confession.

Interrogation refers to express questioning and to any words or actions on the part of police that the police should know are reasonably likely to elicit an incriminating response from the subject. *Anderson, supra* at 532-533. Statements made voluntarily by persons in custody do not fall within the purview of *Miranda. People v Hartford*, 117 Mich App 413, 416; 324 NW2d 31 (1982).

According to the testimony of Detective Thomas Redmond, one of the officers in the police car when defendant confessed, the officers were merely conversing with defendant when defendant made incriminating statements. Detective Redmond testified that he was not "hoping" to talk about the homicide while in the patrol car, but he was "sure that the conversa-

tion would probably turn to that." The officers spoke to defendant about several topics. During the conversation, it came out that defendant had been in Muskegon for about four days. The officers then began discussing the case. Defendant was informed that he was being taken back to Monroe for questioning regarding the Jablonski homicide investigation. Defendant said he was going to cooperate and that he would tell them a little bit that he knew. Defendant informed the officers that he was with the deceased on July 13, 1995. Then defendant suddenly blurted out, "I shot him" and became upset. Redmond testified that he was "shocked" by defendant's admission. Following defendant's inculpatory statement, the officers stopped the patrol car and fully *Mirandized* defendant. Defendant's full confession then followed.

Pursuant to *People v McCuaig*, 126 Mich App 754; 338 NW2d 4 (1983), we find that defendant's inculpatory statement was not made in response to an interrogation and, thus, he was not deprived of his *Miranda* rights. In *McCuaig*, this Court found that no interrogation occurred when a police officer "advised [the] defendant of the nature of the charge against him, and described the circumstances which led police to believe that [the] defendant was the culprit." *Id.* at 759. The *McCuaig* Court reasoned that the officer's statements "were not such that it can be said they were intended to elicit a response." *Id.* at 760.

In this case, the apparent purpose of the officers' conversation with defendant regarding the case, like that in *McCuaig*, was to provide information rather than to elicit a response. *Id.* at 759. Accordingly, defendant was not subjected to conduct that the police should have known was reasonably likely to

elicit an incriminating response, see *Anderson, supra* at 532-533, and the trial court's finding that defendant was not under interrogation when he made his initial inculpatory statement was not clearly erroneous. See *People v McElhaney*, 215 Mich App 269, 273; 545 NW2d 18 (1996). Because defendant's initial statement was properly obtained, his "fruit of the poisonous tree" argument regarding his subsequent confessions also fails. *Oregon v Elstad*, 470 US 298, 309; 105 S Ct 1285; 84 L Ed 2d 222 (1985).

Defendant next argues that the prosecution failed to prove one of the elements of the charge of carjacking. We disagree. The carjacking statute provides:

> (1) A person who by force or violence, or by threat of force or violence, or by putting in fear robs, steals, or takes a motor vehicle as defined in section 412 from another person, in the presence of that person or the presence of a passenger or in the presence of any other person in lawful possession of the motor vehicle, is guilty of carjacking, a felony punishable by imprisonment for life or for any term of years.
>
> (2) A sentence imposed for a violation of this section may be imposed to run consecutively to any other sentence imposed for a conviction that arises out of the same transaction. [MCL 750.529a; MSA 28.797(a).]

Before trial, defendant filed a motion to quash the information relating to the charge of carjacking, asserting that, at the preliminary examination, no evidence was presented to suggest that defendant took a motor vehicle from the "presence" of the victim. The trial court denied this motion. At trial, defendant moved for a directed verdict with regard to the carjacking charge, again arguing that no evidence was presented that the car was taken from the "presence"

of the victim. The trial court also denied this motion. On appeal, defendant again raises this issue. Although this is an issue of first impression in this state, we find no error in defendant's conviction of carjacking.

Although this Court has never had the occasion to interpret the "presence" requirement of the carjacking statute, two other criminal statutes, armed robbery, MCL 750.529; MSA 28.797, and unarmed robbery, MCL 750.530; MSA 28.798, also require a showing of "presence." Under these crimes, the test for the "presence" requirement is as follows:

> "A thing is in the presence of a person, in respect to robbery, which is within his reach, inspection, observation or control, that he could, if not overcome by violence or prevented by fear, retain his possession of it." [*People v Beebe*, 70 Mich App 154, 159; 245 NW2d 547 (1976), quoting *Commonwealth v Homer*, 235 Mass 526, 533; 127 NE 517 (1920); see also *People v Wiley*, 112 Mich App 344, 347; 315 NW2d 540 (1981).]

We find that application of this test to the carjacking statute would be logically consistent with the other statutes in the robbery section of the Michigan Penal Code and would promote the legislative intent to facilitate the prosecution of, and provide harsh penalties for, those persons who use force to take a motor vehicle from another. Accordingly, we hold that the above interpretation of the "presence" requirement is applicable to Michigan's carjacking statute, MCL 750.529a; MSA 28.797(a).

Under this interpretation, we find that the prosecution presented sufficient evidence of the "presence" requirement to allow the jury to convict defendant of carjacking. Defendant confessed to shooting Jablonski in order to obtain the automobile in Jablonski's

possession. After shooting the victim, defendant removed the keys to the Blazer from Jablonski's lifeless body. Given this evidence, a rational trier of fact could find that, before defendant's act of violence, Jablonksi retained possession of the keys and thus was in control of the automobile. The jury could also conclude that, but for defendant's act of violence, Jablonski would have retained his control over the Blazer, despite that the automobile was at least two hundred yards away. Viewing the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have found that the elements of the crime of carjacking were proved beyond a reasonable doubt. See *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). Thus, we will not disturb defendant's conviction of carjacking.

Lastly, defendant argues that he was denied effective assistance of counsel because his trial attorney failed to submit jury instructions regarding the lesser included offenses of voluntary and involuntary manslaughter. We find no merit in this argument. In this case, defendant was charged with first-degree murder. The jury was instructed with regard to first-degree murder and second-degree murder, and found defendant guilty of first-degree murder. The jury's rejection of second-degree murder in favor of first-degree murder reflected an unwillingness to convict of a lesser included offense such as manslaughter. *People v Zak*, 184 Mich App 1, 16; 547 NW2d 59 (1990). Thus, even if defendant's trial counsel had requested a manslaughter instruction and the trial court had failed to give such an instruction, such error would have been harmless. For the same reason, defendant cannot

show that his counsel's failure to request a manslaughter instruction caused him prejudice. Accordingly, defendant cannot sustain his claim of ineffective assistance of counsel. *People v Launsburry*, 217 Mich App 358, 362; 551 NW2d 460 (1996).

Affirmed.