# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

DONALD GLENN LASLEY,

      Defendant-Appellant.

UNPUBLISHED
December 10, 2015

No.   322969
Ionia Circuit Court
LC No.   2013-015854-FC

Before:  OWENS, P.J., and MURPHY and HOEKSTRA, JJ.

PER CURIAM.

Defendant Donald Glenn Lasley was convicted by a jury of first-degree premeditated murder, MCL 750.316(1)(a), and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b.  He was sentenced to life imprisonment without the possibility of parole with respect to the murder conviction and to two years' imprisonment for the felony-firearm conviction.  Defendant appeals as of right.  We affirm.

Defendant first argues that he was denied his right to present a defense when the trial court precluded him from introducing expert testimony on "battered person syndrome"[1] and witnesses who could support a finding that defendant was previously abused by the victim.  The trial court denied admission of the evidence on the determination that a pretrial notice of self-defense had not been filed by defendant, effectively rendering the evidence irrelevant.  We initially note that there is no statutory or court-rule requirement that a defendant file a pretrial notice regarding a claim of self-defense.  See MCL 780.971 *et seq.* (Self-Defense Act); MCR 6.001 *et seq.* But the trial court's ruling also reflected an accurate recognition that battered person syndrome is generally connected to a self-defense theory.

---

[1] Earlier cases from this Court and our Supreme Court discussed what has been termed "battered wife syndrome," "battered woman syndrome," or "battered spouse syndrome."  See, e.g., *People v Christel*, 449 Mich 578, 580; 537 NW2d 194 (1995); *People v Wilson*, 194 Mich App 599, 600-603; 487 NW2d 822 (1992).  We shall use the more generic term "battered person syndrome" throughout this opinion, given that the adult victim and alleged perpetrator of the abuse was defendant's daughter.

-1-

We review the trial court's decision to admit or exclude evidence for an abuse of discretion. *People v Dobek*, 274 Mich App 58, 93; 732 NW2d 546 (2007). An abuse of discretion occurs when the trial court's decision "falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008). Any preliminary questions of law, e.g., whether a rule of evidence or statute precludes the admissibility of evidence, are reviewed de novo, bearing in mind that a court abuses its discretion when it admits evidence that is inadmissible as a matter of law. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999).

A criminal defendant has a right to present a defense under the state and federal constitutions. *People v Kurr*, 253 Mich App 317, 326; 654 NW2d 651 (2002). "Although the right to present a defense is a fundamental element of due process, it is not an absolute right[,] [and] [t]he accused must still comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *People v Hayes*, 421 Mich 271, 279; 364 NW2d 635 (1984) (citation and quotation marks omitted). The admissibility of expert testimony is governed by MRE 702, which provides:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

"A court considering whether to admit expert testimony under MRE 702 acts as a gatekeeper and has a fundamental duty to ensure that the proffered expert testimony is both relevant and reliable." *People v Kowalski*, 492 Mich 106, 120; 821 NW2d 14 (2012). In *Kowalski*, our Supreme Court stated:

> In *People v Christel*,[449 Mich 578, 592; 537 NW2d 194 (1995),] we observed that expert testimony is needed when a witness's actions or responses are incomprehensible to average people. Thus, we permitted a prosecution expert to testify about battered woman syndrome and how a victim of domestic violence might deny, repress, or minimize the abuse. We held that this type of testimony was relevant and helpful when needed to explain a complainant's actions.
>
> The common theme in these cases is that certain groups of people are known to exhibit types of behavior that are contrary to common sense and are not within the average person's understanding of human behavior. In these instances, an expert's specialized testimony may enlighten the jury so that it can intelligently evaluate an experience that is otherwise foreign. [*Kowalski*, 492 Mich at 124 (citations, quotation marks, alteration brackets, and ellipses omitted).]

As part of the battered person syndrome, the abused person lives in constant fear, coupled with a perceived inability to escape a continuing cycle of abuse, eventually resulting in a belief

that the only options are to endure the abuse, to strike back, or to commit suicide. *People v Wilson*, 194 Mich App 599, 603; 487 NW2d 822 (1992).

"In most cases, the battered woman syndrome is offered by the defendant in a case of homicide in which the defendant is claiming self-defense." *Christel*, 449 Mich at 589. In the context of self-defense, testimony regarding the syndrome has been used to show how a battered person reacts to the batterer, to explain the reasonableness of the battered person's perception that danger or great bodily harm is imminent, and to rebut a prosecutor's assertion that the defendant could have left rather than kill the batterer. *Wilson*, 194 Mich App at 604. Defendant correctly asserts that expert testimony on battered person syndrome is not limited to self-defense claims. As touched on above, in *Christel*, 449 Mich at 589, our Supreme Court acknowledged the "minority of situations in which the evidence is offered to help evaluate the credibility of the complainant instead of exculpating the accused." Under those circumstances, expert testimony "is relevant and helpful . . . to explain a complainant's actions, such as prolonged endurance of physical abuse accompanied by attempts at hiding or minimizing the abuse, delays in reporting the abuse, or recanting allegations of abuse." *Id.* at 580.

Here, we conclude that the proposed expert testimony on battered person syndrome was not related to a claim of self-defense, nor relevant to evaluating credibility. Defendant never raised a claim of self-defense, arguing instead, as reflected in closing argument, that "[t]his was an accidental shooting," and that "[h]e never intended to kill his daughter." Defendant himself testified that, while the victim had made a move for the shotgun that defendant had retrieved and threatened to shoot defendant if she got hold of the gun, the discharge that killed his daughter was ultimately accidental, occurring when he jerked the gun back. Also, defendant's statements to the 911 operator and his confession to the lead detective indicated that he shot his daughter after she had verbally abused him, absent any threatening actions by the victim, which shooting was the culmination of seven years of intolerable behavior by defendant's daughter, with defendant reaching his breaking point. His confession did not evidence in any manner self-defense. A defendant claiming self-defense "implies his actions were intentional but that the circumstances justified his actions." *Wilson*, 194 Mich at 602. Thus, expert testimony on battered person syndrome was unnecessary relative to a self-defense claim, as there was no assertion or evidence that the shooting was committed in self-defense. Moreover, expert testimony on battered person syndrome was not sought to be introduced to assist the jury in assessing the credibility of the victim or defendant.

To the extent that defendant now argues on appeal that expert testimony on battered person syndrome was relevant to defendant's credibility, we fail to see any significant connection between the syndrome and defendant's accident theory such that his credibility would have been meaningfully bolstered by the testimony. Indeed, expert testimony on battered person syndrome, along with the supporting evidence of abuse, would likely have bolstered the prosecution's case, considering that such testimony and evidence would have been consistent with defendant's confession to police. Defendant also argues that had the trial court not excluded the expert testimony and purported evidence of abuse prior to trial, defendant could have pursued self-defense at trial as an alternative defense theory. However, at the pretrial hearing that covered the issues concerning battered person syndrome and whether to instruct on voluntary manslaughter, defense counsel stated that self-defense was not being pursued and that battered person syndrome was going to serve as a basis to negate the intent to kill, as we discuss

below. Further, we fail to see how defendant could have possibly testified to both accident and an intentional shooting done in self-defense.

Defendant argues that expert testimony on battered person syndrome was crucial to the defense theory that defendant did not possess the requisite state of mind to commit murder, and that, at most, defendant committed voluntary manslaughter. Thus, defendant offers that the proposed testimony was relevant to help negate his intent. However, defendant offers no legal authority supporting the proposition that evidence on battered person syndrome is relevant in this regard. As discussed in *Wilson*, 194 Mich App at 603, battered person syndrome speaks to situations in which an individual comes to believe that his or her only options are to endure the abuse, strike back, or commit suicide. Defendant fails to explain in any meaningful and convincing manner how battered person syndrome would prevent a person from forming the intent to kill or from acting with premeditation or deliberation.[2] Rather, testimony on battered person syndrome is admitted for the purpose of demonstrating that the battered person was *justified* in killing his or her batterer, given the perception that danger or great bodily harm was imminent. *Id.* at 602. Furthermore, defendant's accident theory already provided a basis for defendant to argue that he lacked the intent to kill his daughter.

Defendant's argument also suggests that battered person syndrome, along with the proffered evidence of abuse, were relevant to the offense of voluntary manslaughter. "[T]o show voluntary manslaughter, one must show that the defendant killed in the heat of passion, the passion was caused by adequate provocation, and there was not a lapse of time during which a reasonable person could control his passions." *People v Mendoza*, 468 Mich 527, 535-536; 664 NW2d 685 (2003). Insulting words, as opposed to words of an informative nature, generally do not constitute adequate provocation. *People v Pouncey*, 437 Mich 382, 391; 471 NW2d 346 (1991).[3] We find it unnecessary to ascertain whether battered person syndrome and the alleged supporting evidence may have been relevant to the crime of voluntary manslaughter and the question whether defendant acted in the heat of passion as caused by adequate provocation. We also find it unnecessary to determine whether the evidence in general supported a voluntary manslaughter instruction. Defendant waived the issue when his counsel stated at trial that, in light of the evidence, a voluntary manslaughter instruction would not be appropriate and that he was satisfied with instructions solely on first- and second-degree murder. See *People v Carter,* 462 Mich 206, 215; 612 NW2d 144 (2000) (waiver is the intentional relinquishment or

---

[2] Defendant's argument poses a comparison to the defunct defense of diminished capacity. Since 1975, the insanity defense has been governed by statute. *People v Carpenter*, 464 Mich 223, 230; 627 NW2d 276 (2001), citing 1975 PA 180. In *Carpenter*, the Supreme Court held that the Legislature created "an all or nothing insanity defense" and that "evidence of mental incapacity short of insanity cannot be used to avoid or reduce criminal responsibility *by negating specific intent*." *Id.* at 237 (emphasis added). *Carpenter* explicitly rejected the continuing viability of a "diminished capacity" defense. *Id.* at 235-236.

[3] According to defendant's statement to the police, the shooting was triggered by insulting words communicated by the victim to defendant, although couched in a history of abuse.

abandonment of a known right). A defendant is not allowed to waive objection to an issue at trial and then claim error on appeal. *People v Fetterley*, 229 Mich App 511, 520; 583 NW2d 199 (1998). Defendant has not raised any associated claim of ineffective assistance of counsel. Further, defendant cannot establish the necessary prejudice in order to avoid the harmless error rule, given that the jury convicted him of first-degree murder and rejected a second-degree murder conviction. See *People v Raper*, 222 Mich App 475, 483-484; 563 NW2d 709 (1997).[4]

Defendant contends, however, as he did in the context of self-defense, that had the trial court, prior to trial, not excluded expert testimony on battered person syndrome and the testimony of witnesses who were supposedly prepared to testify to abuse, there would have been sufficient evidence to support a voluntary manslaughter instruction and the jury may have seriously considered a lesser charge.[5] First, when defendant argued before trial in favor of admitting the evidence at issue, he focused exclusively on the now-rejected argument that it negated the element of intent; defendant did not argue that the evidence should be admitted to advance a voluntary manslaughter theory. Additionally, assuming the relevancy of the evidence, as bearing on whether defendant acted in the heat of passion upon adequate provocation, it is difficult if not impossible to reconcile an intentional killing predicated on manslaughter with defendant's testimony that the shooting was an accident. Although the evidence would have been consistent with defendant's description of what occurred as conveyed to the police in his confession, we conclude that reversal is unwarranted, because defendant has not established prejudice, where he has not argued, let alone shown, that the evidence was sufficient to overcome the general rule that insulting words do not constitute adequate provocation. In sum, reversal is unwarranted with respect to defendant's arguments regarding battered person syndrome, the associated evidence of abuse, and voluntary manslaughter.

---

[4] In *Raper*, 222 Mich App at 483-484, this Court explained:

> In this case, defendant was charged with first-degree murder. The jury was instructed on first-degree murder and second-degree murder, and found defendant guilty of first-degree murder. The jury's rejection of second-degree murder in favor of first-degree murder reflected an unwillingness to convict on a lesser included offense such as manslaughter. Thus, even if defendant's trial counsel had requested a manslaughter instruction and the trial court had failed to give such an instruction, such error would have been harmless. For the same reason, defendant cannot show that his counsel's failure to request a manslaughter instruction caused him prejudice. [Citation omitted.]

[5] Implicit in defendant's argument is that nothing can be made of the fact that the jury failed to convict him of second-degree murder, given that the jury did not have the benefit of hearing testimony on battered person syndrome and, perhaps more importantly, hearing extensive testimony of the abuse itself.

Next, defendant argues that his Fifth Amendment rights were violated when the interrogating detective did not "scrupulously honor" his purported invocation of the right to silence. As a result, defendant argues that the trial court erred by admitting a recorded interview containing his statements that were made after he asserted his right to remain silent. Defendant, however, waived this claim by stipulating on the record to the admission of the entire recorded interview into evidence. *Carter*, 462 Mich at 215-216. Defendant bootstraps a claim of ineffective assistance of counsel. Even assuming—without deciding—that defendant unequivocally asserted his right to remain silent and that it was not "scrupulously honored" by the detective, see *People v Henry (After Remand)*, 305 Mich App 127, 145; 854 NW2d 114 (2014), he cannot establish the requisite prejudice, assuming counsel's performance was deficient, *People v Carbin*, 463 Mich 590, 599-600; 623 NW2d 884 (2001). Before defendant presumably asserted his right to remain silent in the recorded interview, he provided a very lengthy and detailed description of the victim's killing, including the fact that he retrieved a shotgun from his bedroom, removed the lock, loaded the gun, and shot the victim. The latter part of the interview was no more inculpatory than these admissions. Given that this evidence was properly before the jury, defendant cannot establish that admission of the full interview prejudiced him.

Affirmed.

/s/ Donald S. Owens
/s/ William B. Murphy
/s/ Joel P. Hoekstra

-6-