# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CHARLES FRAZIER YOUNG,

        Defendant-Appellant.

UNPUBLISHED
March 10, 2016

No. 324607
Wayne Circuit Court
LC No. 12-004096-FC

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

CHARLES FRAZIER YOUNG,

        Defendant-Appellant.

No. 324608
Wayne Circuit Court
LC No. 12-004097-FH

Before: M. J. KELLY, P.J., and CAVANAGH and SHAPIRO, JJ.

PER CURIAM.

Defendant appeals as of right his jury convictions of two counts of first-degree murder, MCL 750.316(1)(a), one count of mutilation of a dead body, MCL 750.160, and one count of arson of a dwelling house, MCL 750.72(1)(a). We affirm.

This case arises from the murders of David Simard and Felicidad Tabares at the home shared by defendant and codefendant Salim Nafsu, the mutilation of their corpses, and the subsequent arson of the home in which they were killed. Defendant and Nafsu were tried together by a single jury. Once trial began, Nafsu's attorney asserted that defendant was to blame for all of the offenses and Nafsu was an innocent bystander or a victim.

## I. FAILURE TO DECLARE A MISTRIAL

Defendant contends that the "antagonistic and irreconcilable" defenses he and Nafsu asserted mandated severance of their trials; thus, the trial court erred in failing to grant a mistrial on severance grounds. We disagree.

-1-

Defendant contends that the trial court erred in refusing his request for a mistrial, but his argument on appeal strictly addresses the court's decision in a severance context. Defense counsel, however, did not move to sever the trials, did not file a response to the prosecution's motion to consolidate, and did not object to joinder in a substantive way at any stage of the proceedings. Thus, the issue is unpreserved. See *People v Mayfield*, 221 Mich App 656, 660; 562 NW2d 272 (1997). We review unpreserved issues for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). An error affects the defendant's substantial rights if it prejudiced the defendant by affecting the outcome of the trial. *Id.*

Generally speaking, "[a] mistrial is warranted only when an error or irregularity in the proceedings prejudices the defendant and impairs his ability to get a fair trial." *People v Waclawski*, 286 Mich App 634, 708; 780 NW2d 321 (2009) (citation and quotation marks omitted). The error or irregularity must be so egregious that a mistrial is the only way to remove its prejudicial effect. *People v Horn*, 279 Mich App 31, 36; 755 NW2d 212 (2008).

As a threshold matter, we note that the trial court properly granted joinder of the various charges against defendant and Nafsu and appropriately exercised its discretion in opting to try the men together. See MCL 768.5 ("When 2 or more defendants shall be jointly indicted for any criminal offense, they shall be tried separately or jointly, in the discretion of the court."); MCR 6.120(B) (providing that joinder of multiple offenses against a single defendant is appropriate when, among other circumstances, the offenses are based on a series of connected acts or the same transaction or occurrence). Assuming proper joinder, then, defendant's right to severance was governed by MCR 6.121(C), which provides that "[o]n a defendant's motion, the court must sever the trial of defendants on related offenses on a showing that severance is necessary to avoid prejudice to substantial rights of the defendant[,]" and MCR 6.121(D), which grants a trial court discretion to sever defendants' trials, upon a party's motion, when "appropriate to promote fairness to the parties and a fair determination of the guilt or innocence of one or more of the defendants."

MCR 6.121(C) mandates severance "only when a defendant provides the court with a supporting affidavit, or makes an offer of proof, that clearly, affirmatively, and fully demonstrates that his substantial rights will be prejudiced and that severance is the necessary means of rectifying the potential prejudice." *People v Hana*, 447 Mich 325, 346; 524 NW2d 682 (1994), amended in part on reh sub nom *People v Gallina*, 447 Mich 1203 (1994) and *People v Rode*, 447 Mich 1203 (1994). "The failure to make this showing in the trial court, absent any significant indication on appeal that the requisite prejudice in fact occurred at trial, will preclude reversal of a joinder decision." *Id.* at 346-347.

Inconsistent defenses do not meet the threshold for mandated severance under MCR 6.121(C), nor does "[i]ncidental spillover prejudice, which is almost inevitable in a multi-defendant trial[.]" *Hana*, 447 Mich at 349. Instead, the defenses must be mutually exclusive or irreconcilable, meaning that "the jury, in order to believe the core of the evidence offered on behalf of one defendant, must disbelieve the core of the evidence offered on behalf of the co-defendant." *Id.* at 349-350 (citation and quotation marks omitted). In sum, a trial court should grant a request for severance "only if there is a serious risk that a joint trial would compromise a

specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id*. at 359-360 (citation and quotation marks omitted).

The trial court did not err in refusing defendant's request for a mistrial. Indeed, we question whether defense counsel actually made a request for a mistrial on severance grounds, as defendant contends on appeal. Rather, defendant asked the court to consider two alternatives—a mistrial or a cautionary instruction—to mitigate perceived prejudice stemming from Nafsu's decision not to testify and from what Nafsu's lawyer might potentially say during his closing argument. Defense counsel noted that "this case likely should have been severed" given the new defense theories from Nafsu's opening statement and closing argument, but she never requested severance during the trial. Nor did defendant's counsel present a supporting affidavit or make an offer of proof demonstrating that defendant's substantial rights would be prejudiced and that severance under MCR 6.121(C) was the necessary means of rectifying the potential prejudice. See *Hana*, 447 Mich at 346. Failure to make this showing precluded reversal of the court's implicit decision to deny severance. See *id*. at 346-347.

Further, assuming that defendant had presented an affidavit or offer of proof, the evidence did not support severance. Certainly, Nafsu's lawyer and his theories were antagonistic toward defendant, but it does not necessarily follow that defendant's and Nafsu's defenses were mutually exclusive or irreconcilable. See *id*. at 349 (noting that multiple defendants' attempts to "escape conviction by pointing the finger at each other" do not require severance). Rather, to be mutually exclusive or irreconcilable, the jurors would necessarily have had to disbelieve evidence offered on behalf of defendant in favor of that offered by Nafsu. *Id*. at 349-350. Neither man offered any evidence whatsoever, though, and the evidence that the prosecution introduced implicated both defendant and Nafsu, either directly or under an aiding-and-abetting theory. The contentions of Nafsu's lawyer—namely, that his client was innocent, defendant committed all of the crimes on his own, and defendant tried to murder Nafsu by burning the house down around him—may have been inflammatory and influential, but they were not evidence, and the trial court instructed the jury to that effect in preliminary and final instructions.

Moreover, the trial court also instructed the jurors that they were only to consider properly admitted evidence in reaching their verdicts, and that they were to consider all of the evidence against defendant and Nafsu separately. Thus, even if the statements of Nafsu's lawyer were prejudicial to defendant, the court's instructions presumably cured the potential prejudice. See *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). Accordingly, defendant fails to establish that the defenses he and Nafsu asserted were mutually exclusive or irreconcilable, that the trial court's failure to grant severance resulted in a serious risk of prejudice to his trial rights, or that the joint trial prevented the jurors "from making a reliable judgment about guilt or innocence." *Hana*, 447 Mich at 359-360. Defendant asserts no other grounds for mistrial and fails to highlight any error or irregularity in the proceedings that prejudiced him and impaired his ability to get a fair trial. See *Waclawski*, 286 Mich App at 708. Therefore, the trial court's refusal to grant a mistrial did not constitute plain error affecting substantial rights. See *Carines*, 460 Mich at 763.

-3-

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant contends that his counsel was ineffective for failing to move for severance and, further, that failure prejudiced defendant by denying him a fair trial. In a Standard 4 brief, defendant argues that counsel was also ineffective for failing to investigate witnesses, adequately cross-examine prosecution witnesses, and investigate defendant's mental-health history and treatment for purposes of mounting an insanity defense. We disagree with each of defendant's contentions on the issue.

To preserve a claim of ineffective assistance of trial counsel for appellate review, a defendant must move for a new trial or for a *Ginther*[1] hearing in the trial court. *People v Lopez*, 305 Mich App 686, 693; 854 NW2d 205 (2014). Defendant did not move for a new trial or a *Ginther* hearing in the trial court; therefore, this issue is unpreserved for appellate review and our review is limited to errors apparent on the record. See *id*. (citation omitted).

"To prevail on a claim of ineffective assistance of counsel, a defendant must show: (1) that his attorney's performance was objectively unreasonable in light of prevailing professional norms; and (2) that he was prejudiced by the deficient performance." *People v Walker*, 497 Mich 894, 895; 855 NW2d 744 (2014). "To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001). A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

"Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Eisen*, 296 Mich App 326, 329; 820 NW2d 229 (2012) (citation omitted). More specifically, there is a strong presumption that defense counsel employed effective trial strategy, *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009), and we "will not substitute our judgment for that of counsel on matters of trial strategy, nor will we use the benefit of hindsight when assessing counsel's competence," *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008). "A particular strategy does not constitute ineffective assistance of counsel simply because it does not work." *People v Matuszak*, 263 Mich App 42, 61; 687 NW2d 342 (2004). Importantly, too, the defendant bears the burden of establishing the factual predicate for a claim of ineffective assistance of counsel. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

## A. MOVING FOR SEVERANCE

Defense counsel's failure to move for severance did not constitute ineffective assistance. As discussed above, defendant and Nafsu did not assert the mutually exclusive or irreconcilable defenses that would mandate severance under MCR 6.121(C). See *Hana*, 447 Mich at 349. On any party's motion, however, the court could also grant severance under MCR 6.121(D), which provides:

---

[1] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

On the motion of any party, the court may sever the trial of defendants on the ground that severance is appropriate to promote fairness to the parties and a fair determination of the guilt or innocence of one or more of the defendants. Relevant factors include the timeliness of the motion, the drain on the parties' resources, the potential for confusion or prejudice stemming from either the number of defendants or the complexity or nature of the evidence, the convenience of witnesses, and the parties' readiness for trial.

It is highly unlikely that the trial court would have granted a motion for severance under MCR 6.121(D). The court had already told the parties, "I don't see why these cases have to be tried separately[,]" and "I don't see the necessity for separating the cases." The court had also denied Nafsu's request for a bench trial, holding that a single jury in a single trial could decide the issues. The trial court noted that the appropriate remedy for the antics of Nafsu's lawyer was jury instructions, not a mistrial or severance. Additionally, the court told the attorneys that "I still don't think that we have a situation here where the jury is likely to lump the two [d]efendants together unjustly and not based on the evidence and the law that applies to this case[,]" demonstrating that the court did not see a significant potential "for confusion or prejudice stemming from either the number of defendants or the complexity or nature of the evidence[.]" See MCR 6.121(D). And since defense counsel only learned of Nafsu's blame-shifting strategy once the trial began, considerations of timeliness preponderated against the court granting a severance motion as well. See *id*. Finally, it would have been inconvenient to recall all of the witnesses—particularly the ones who were, at that very moment, in court and ready to testify—for a separate trial. See *id*. Thus, any severance motion would have been futile, and defense counsel's failure to make such a motion did not fall below an objective standard of reasonableness. See *Walker*, 497 Mich at 895.

Nor has defendant established prejudice as a result of the alleged error. Despite his blanket assertion that the joint trial deprived him of his right to a fair trial, defendant was convicted on the strength of witness testimony, forensic evidence, DNA evidence, and surveillance videos—all of which would have been arrayed against him even if the trials had been severed. Defendant thus fails to establish the second prong of his ineffective-assistance claim. See *id*.

## B. INVESTIGATING WITNESSES

"Failure to make a reasonable investigation can constitute ineffective assistance of counsel." *People v McGhee*, 268 Mich App 600, 626; 709 NW2d 595 (2005). Provided that defense counsel makes a complete investigation, however, the decision regarding what evidence to present is a matter of trial strategy. *Wiggins v Smith*, 539 US 510, 521-522; 123 S Ct 2527; 156 L Ed 2d 471 (2003). "In general, the failure to call a witness can constitute ineffective assistance of counsel only when it deprives the defendant of a substantial defense." *Payne*, 285 Mich App at 190 (citation and quotation marks omitted). "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009) (citation omitted).

Deloneo Young, who was incarcerated in the Wayne County Jail with defendant, served as a witness for the prosecution at trial. According to Young, defendant had confessed that he

and Nafsu killed Simard and Tabares, and defendant had further described the subsequent attempts to destroy evidence of the murders. Young later entered into an agreement with the Wayne County Prosecutor's Office whereby, in exchange for his testimony, he would receive probation rather than jail time for his own recent criminal conviction.

On appeal, defendant asserts that Young spoke with two fellow inmates of the Wayne County Jail, William Hunt and Christopher "Black" Lomax, and asked them to "jump on" defendant's case with him. But there is simply no evidence of such a conversation in the lower court record, and this court's review is limited to errors apparent on the record because defendant failed to preserve his ineffective-assistance claim. See *Lopez*, 305 Mich App at 693. Defendant thus fails to establish the factual predicate for his claim. See *Hoag*, 460 Mich at 6.

Moreover, we fail to discern how further investigating Hunt and Lomax, calling them as witnesses, or questioning Young more strenuously about them would have served his cause. Detroit Police Officer Allen Williams testified that he took Young seriously because Young possessed information about the murders that was unknown to the general public. Regardless of whether Young tried to convince the other inmates to support his account of his conversation, it did not invalidate his information, which he related to authorities before he read portions of defendant's discovery packet. Calling Hunt and Lomax as witnesses could have further damaged Young's credibility because they might have been able to refute his claims that he did not know them, but his credibility was already sufficiently damaged: his testimony was halting and inconsistent, he admitted that he did not want to be there, and he was forced to admit on cross-examination that selfish reasons motivated him to contact the authorities. His in-court testimony varied far enough from his original statement that the court excused him from the stand and allowed him to go over the statement thoroughly before resuming testimony.

Finally, contrary to defendant's protestations, defense counsel was justified in not cross-examining Young about Hunt and Lomax at trial. Young had flatly denied knowing or speaking to either man when he testified at the preliminary examination, and it is unlikely that his testimony would have changed at trial, no matter how many times defense counsel asked him. Particularly given the limited utility of any questions about Hunt and Lomax, defense counsel's decision to avoid the issue with Young was merely a matter of trial strategy. And defendant has done nothing to rebut the strong presumption that the strategy was effective despite his eventual conviction. See *Payne*, 285 Mich App at 190.

## C. CROSS-EXAMINING LAWLESS

Defendant's ex-girlfriend, Francine Lawless, was the first to discover the deaths of Simard and Tabares, and she testified regarding defendant's and Nafsu's statements about the murders. During her direct examination, she admitted smoking crack at a motel with defendant and Nafsu the night after the murders. She also noted that she had prescriptions for Xanax and Vicodin, and she confessed that she had lied to the police in her original statement because she "wanted to lie for [defendant] for a minute." Defendant, however, argues that defense counsel was ineffective for failing to more strenuously cross-examine Lawless about her drug use and her preexisting mental conditions.

Defense counsel's choices in this regard constituted trial strategy. By the time defense counsel began cross-examination, Lawless had already told the jury that she had smoked crack, held prescriptions for powerful medications, and omitted incriminating information against defendant when she first spoke to the police. Defense counsel, as well as Nafsu's lawyer, both asked her whether she had smoked crack at the hotel, and she once again admitted that she had. Defense counsel additionally asked if smoking crack had ever affected Lawless's personality or memory, and Lawless replied that it had not. Defendant argues that more aggressive questioning could have damaged Lawless's credibility, but there is no evidence for the argument—she had already admitted illegal drug use and lying to the police, and there is no evidence in the record to suggest that she was a drug addict or had a mental condition that would have rendered her testimony suspect.

Like decisions regarding which witnesses to call, the manner and extent to which an attorney examines a witness is presumed to be a matter of trial strategy. *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012). Consequently, that decision only constitutes ineffective assistance of counsel if it deprived defendant of a substantial defense. *Id*. Defendant's ineffective-assistance claim therefore fails because he does not demonstrate that examining Lawless more extensively or aggressively could have made a difference in the trial's outcome or that counsel's strategy fell below an objective standard of reasonableness. See *Walker*, 497 Mich at 895.

## D. INVESTIGATING DEFENDANT'S MENTAL HEALTH

"Trial counsel is responsible for preparing, investigating, and presenting all substantial defenses." *Chapo*, 283 Mich App at 371. Defendant contends that his counsel failed to adequately explore the depths of his mental-health history and ongoing treatment, including an allegation that psychotropic medication so incapacitated him that he was unable to assist in his own defense.

There is no evidence that defendant was incapable of assisting in his own defense at any stage of the proceedings, that counsel could have validly considered an insanity defense, or that defendant's mental-health condition warranted a competency evaluation. Instead, defendant responded appropriately during his trial when the court conducted voir dire regarding his decision not to testify and spoke briefly but coherently at sentencing. The presentence investigation report provides that defendant took a quintet of prescription medications for a host of reasons, but defendant self-reported that information—and, in any event, there is no evidence that any of the medications or self-reported psychological issues warranted further investigation by defense counsel. Further, Young testified during the preliminary examination that defendant had related a plan to him wherein defendant and Nafsu would "play crazy for court[.]" Thus, defendant fails to establish the factual predicate of his claim because the lower record does not in any fashion establish his mental illness or lack of criminal culpability. See *Hoag*, 460 Mich at 6.

## III. VOLUNTARY-MANSLAUGHTER INSTRUCTION

Defendant contends that the trial court erred in failing to instruct the jury on voluntary manslaughter because the evidence supported the instruction, a question of fact existed regarding

whether Simard and Tabares had sufficiently provoked defendant, and the failure to give the instruction undermined the jury's guilty verdict. We disagree.

Generally, we review de novo a party's claim of instructional error. *People v Hartuniewicz*, 294 Mich App 237, 242; 816 NW2d 442 (2011). We review for an abuse of discretion, however, "a trial court's determination that a specific instruction is inapplicable given the facts of the case." *Id.* "A trial court abuses its discretion when it selects an outcome outside the range of reasonable and principled outcomes." *People v Uphaus (On Remand)*, 278 Mich App 174, 181; 748 NW2d 899 (2008). "The defendant bears the burden of establishing that the asserted instructional error resulted in a miscarriage of justice." *People v Dupree*, 486 Mich 693, 702; 788 NW2d 399 (2010).

"When a defendant is charged with murder, the trial court must give an instruction on voluntary manslaughter if the instruction is supported by a rational view of the evidence." *People v Mitchell*, 301 Mich App 282, 286; 835 NW2d 615 (2013) (citation and quotation marks omitted). That is, evidence must exist from which a jury could rationally conclude that the defendant acted "in the heat of passion, the passion was caused by adequate provocation, and there was not a lapse of time during which a reasonable person could control his passions." *People v Reese*, 491 Mich 127, 143; 815 NW2d 85 (2012) (citation omitted). "The degree of provocation required to mitigate a killing from murder to manslaughter is that which causes the defendant to act out of passion rather than reason." *People v Tierney*, 266 Mich App 687, 714-715; 703 NW2d 204 (2005) (citation and quotation marks omitted). The provocation must be sufficient to "cause a reasonable person to lose control." *Id.* at 715 (citation and quotation marks omitted). An instructional error is not a ground for reversal unless "after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999) (citation and quotation marks omitted).

The trial judge's refusal to give a voluntary-manslaughter instruction did not constitute an abuse of discretion. As an initial matter, we note that defendant arguably waived the issue of erroneous jury instructions because defense counsel specifically expressed satisfaction with the trial court's instructions. See *People v Wood*, 307 Mich App 485, 519; 862 NW2d 7 (2014), vacated in part on other grounds 871 NW2d 154 (2015).

Assuming, however, that defendant had not waived the issue, a rational view of the evidence did not support a voluntary-manslaughter instruction. Evidence regarding the last moments of Simard and Tabares was almost entirely derived from two sources: Lawless's testimony about the statements defendant made to her and the medical examiner's testimony. Lawless merely relayed that the fight was about drugs, that Simard had pushed defendant, and that defendant had hit Simard over the head. The medical examiner testified that Simard's and Tabares's bodies showed evidence of head wounds, but that the wounds were superficial and both had been killed by deep slashes across their throats. There was simply no evidence by which a jury could rationally conclude that defendant acted in the heat of passion, that he was adequately provoked, or that the circumstances failed to present a lapse of time during which he could "control his passions." *Reese*, 491 Mich at 143. Instead, the evidence tended to show that defendant and Simard were involved in a scuffle, defendant hit Simard over the head, and Simard and Tabares were eventually killed—perhaps while incapacitated by their head

-8-

wounds—by knife slashes to the throat. Accordingly, the trial judge's refusal to instruct the jurors on voluntary manslaughter did not constitute an abuse of discretion because it was within a range of reasonable and principled outcomes. See *Uphaus (On Remand)*, 278 Mich App at 181. But even if the court abused its discretion in refusing to give the instruction, such error was harmless because the jurors rejected the lesser offense of second-degree murder in favor of finding defendant guilty of first-degree murder—a clear indication that the jury was unwilling to convict on a lesser offense like manslaughter. See *Lukity*, 460 Mich at 495-496; *People v Raper*, 222 Mich App 475, 483-484; 563 NW2d 709 (1997) (holding that, assuming the trial court erred in failing to give a manslaughter instruction, the error was harmless because the jury's decision to convict the defendant of first-degree murder rather than second-degree murder "reflected an unwillingness to convict of a lesser included offense such as manslaughter").

Affirmed.


/s/ Michael J. Kelly
/s/ Mark J. Cavanagh
/s/ Douglas B. Shapiro