# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

JOSEPH JAMES PAGAN,

       Defendant-Appellant.

UNPUBLISHED
May 23, 2017

No. 325558
Macomb Circuit Court
LC No. 2014-002252-FC

Before: RIORDAN, P.J., and RONAYNE KRAUSE and SWARTZLE, JJ.

PER CURIAM.

Defendant was convicted by a jury of first-degree premeditated murder, MCL 750.316, and first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(f) (personal injury and force or coercion). He was sentenced to life imprisonment without the possibility of parole for the first-degree murder conviction, and 225 months to 40 years' imprisonment for the CSC-I conviction. Defendant appeals as of right. We affirm.

Defendant's first argument is that there was insufficient evidence of penetration for the jury to be able to find beyond a reasonable doubt that he committed CSC-I, and the felony information failed to provide him with adequate notice of the nature of the CSC-I charge. After beating the victim, strangling her, and duct-taping garbage bags over her head, defendant retrieved an air rifle from his vehicle and shot the victim several times. One of those shots he directed "at" her vagina; at the time, he was standing over her and she was lying naked on the floor. Defendant accurately points out that the information and the instruction given to the jury indicated that defendant accomplished the penetration with the rifle; however, the evidence shows that defendant never brought the rifle itself into any kind of direct physical contact with the victim's genitalia. Rather, the pellet penetrated the victim's left labia majora. Although perhaps a horrific fact pattern, we find the information and evidence sufficient.

When CSC-I is charged pursuant to MCL 750.520b(1)(f), the prosecution must prove three elements: (1) the defendant caused personal injury to the victim; (2) the defendant engaged in sexual penetration with the victim; and (3) the sexual penetration was accomplished by use of force or coercion. *People v Nickens*, 470 Mich 622, 629; 685 NW2d 657 (2004). "Sexual penetration" is defined, in relevant part, as including "any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body." MCL 750.520a(r). Relatively few cases have directly addressed whether the labia comes

-1-

within the scope of "sexual penetration." However, those cases have uniformly held that the Legislature intentionally specified and distinguished "genital opening" from "vagina," and the labia majora is part of the "genital opening." *People v Bristol*, 115 Mich App 236, 237-238; 320 NW2d 229 (1981); *People v Whitfield*, 425 Mich 116, 135 n 20; 388 NW2d 206 (1986); *People v Legg*, 197 Mich App 131, 132-134; 494 NW2d 797 (1992); *People v Lockett*, 295 Mich App 165, 188; 814 NW2d 295 (2012). We will not read into the statute any requirements not stated. We therefore find that the pellet intruded into the victim's genital opening.

Furthermore, we will not infer a requirement into the statute that defendant maintain physical contact with the penetrating object where he was unambiguously the proximate and immediate cause of that penetration. For the same reason, we do not find the information or the jury instruction insufficient. We think that they *could* have been more clear; however, there can be no doubt that defendant used the air rifle to effectuate the penetration. The pellet, for all practical purposes, was part of the rifle as a total instrumentality. We do not think the information and instruction inconsistent with the evidence, and at worst any vagueness in the information was obviated by testimony at the preliminary examination. Defendant did not object to the information, and any error therein does not rise to plain error affecting his substantial rights. See *People v Bailey*, 310 Mich App 703, 715-716; 873 NW2d 855 (2015). A rational trier of fact could have found beyond a reasonable doubt that defendant used the air rifle to penetrate the victim's genital opening. See *People v Unger*, 278 Mich App 210, 222, 253; 749 NW2d 272 (2008).

Defendant next argues that the trial court erred by denying his request for a jury instruction regarding voluntary manslaughter. We disagree. Manslaughter is, literally, "murder without malice," and the voluntary manslaughter defendant proposes here must be an intentional act of killing committed as a direct and immediate response to a "reasonable provocation" before the actor has had a reasonable opportunity to regain self-control. *People v Mendoza*, 468 Mich 527, 533-536; 664 NW2d 685 (2003). Such provocation is not an element of manslaughter, but rather a circumstance that can negate the existence of malice. *Id*. at 536. "[A] trial court's determination whether an instruction was applicable to the facts of the case is reviewed for an abuse of discretion." *People v Waclawski*, 286 Mich App 634, 675; 780 NW2d 321 (2009).

This issue is complicated by defendant's obviously dubious attachment to reality evidenced by a number of statements he made at his police interview, including apparently having seen the victim alive the next day; discussing involvement in various military forces that proved unverifiable; the victim forcibly drugging him with a variety of improbable substances and selling him to other women multiple times over the course of their relationship; the victim having admitted to killing 30,001 people; and the victim making threats involving defendant's nonexistent son. On the day of the murder, defendant and the victim had sex, and according to defendant, at some point during that encounter, the victim maneuvered him into a position where she could have snapped his neck. Apparently, she also somewhat contemporaneously either threatened the aforementioned nonexistent son or stated that she had killed him. Defendant contended that he then jumped out of bed, hit her with his cane (which broke), and attempted to leave, at which point the victim threw a gumball machine at him.

Despite admitting that he suffered only a few scrapes, defendant then attacked the victim with the same gumball machine, breaking it in the process and causing her severe injuries. As

-2-

the victim was lying on the floor, defendant then put several strips of duct tape over her mouth, placed a trash bag that was still full of trash over her head, and secured it in place with more duct tape and a large lace doily. It was then that he retrieved the pellet rifle, shot her multiple times, poured bleach on her, and then cleaned himself and his dog up and left the scene.

Taking defendant's contradictory and confused statements in the light most favorable to him, we cannot find reasonable provocation. Presuming, although not deciding, that whatever occurred while defendant and the victim were having sex could have been perceived as threatening, defendant conceded that any such threat had been terminated and, critically, *he was leaving*. Notably, reasonable provocation is not the same as diminished capacity: the trial court correctly observed that the reasonableness of a provocation is objective and based on "that which would cause a *reasonable person* to lose control." *People v Sullivan*, 231 Mich App 510, 518; 586 NW2d 578 (1998) (emphasis in original). Defendant was unambiguously not under any serious imminent threat, and the evidence overwhelmingly shows that whatever other provocation might have occurred was mostly to completely delusional. A defendant's delusions might, under the right circumstances and in the right case, be relevant to a claim of diminished capacity or insanity, but a defendant's unique mental state is not relevant to the determination of reasonable provocation for purposes of voluntary manslaughter. *Id*. at 519-520.

The trial court properly refused to give defendant's requested voluntary manslaughter instruction. In any event, the jury was offered the choice of finding defendant guilty of the lesser offense of second-degree murder, and it chose not to take that choice. This demonstrates that the jury would have been unlikely to convict defendant of the lesser offense of voluntary manslaughter even if the instruction had been given. *People v Raper*, 222 Mich App 475, 483; 563 NW2d 709 (1997). Finally, the absence of the instruction did not preclude defendant from arguing that he should be acquitted altogether on the theory that his real offense was not provided as an option. Consequently, even if the trial court had committed error, it was harmless.

Next, defendant argues that he is entitled to resentencing because his sentence was imposed before the Michigan Supreme Court found that the statutory sentencing guidelines were unconstitutional in *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). Defendant does not explicitly limit his claim of error to his CSC-I sentence, but implicitly must, because the mandatory life sentence to which he was contemporaneously sentenced for first-degree murder is not subject to the statutory sentencing guidelines. MCL 769.34(5). We therefore need not address this issue at all: the contemporaneous mandatory life sentence "effectively nullifies the significance of any sentences for the companion convictions." *People v Watkins*, 209 Mich App 1, 5; 530 NW2d 111 (1995). Because defendant cannot demonstrate that any error "affected the outcome of the lower court proceedings," *Lockridge*, 498 Mich at 393, it is unnecessary to consider whether there was in fact any error.

In his Standard 4 brief, defendant contends that the trial court erred by admitting a series of graphic photographs from Neumann's autopsy because they were unfairly prejudicial and unnecessary to the prosecution's case. We disagree.

Defendant does not suggest that the autopsy photographs were irrelevant under MRE 401, nor would any such assertion have been reasonable. The autopsy photographs depicted the

-3-

nature and extent of the victim's injuries, which made defendant's premeditation and deliberation more probable than it would have been without the evidence. See *People v Gonzalez*, 468 Mich 636, 641-642; 664 NW2d 159 (2003) (stating that manual strangulation may evidence elapsed time between initial homicidal thought and ultimate action for purposes of establishing first-degree premeditated murder). The photographs were also helpful in corroborating the testimony about the lengthy process employed by defendant to kill the victim, and to illustrate the medical testimony provided. Their relevance and probative value were not trivial.

Conversely, it is not seriously disputable that the photographs were disturbingly graphic. The victim's injuries were severe and her body had been decomposing for approximately a week before the autopsy took place. As a result of the decomposition process and the caustic nature of the bleach that was poured on her, many areas of skin were discolored and there was significant sloughing of the skin visible in the photographs. Numerous injuries, ranging from pellet wounds to lacerations to bruising and lividity. Even the prosecution characterized the photographs as "bloody, brutal, [and] graphic." In fact, during the presentation of the autopsy photographs, one juror lost consciousness. However, there is no direct indication that the photographs were the cause of the juror's infirmity, and the trial court, prosecution, and defense counsel all agreed that the incident involving the juror did not affect the manner in which the trial proceeded and would be unlikely to influence the remaining jurors' ability to continue with the case.

Even relevant evidence may be excluded at the trial court's discretion "'if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.'" *People v Blackston*, 481 Mich 451, 461; 751 NW2d 408 (2008), quoting MRE 403. Photographic evidence need not be excluded merely because it is gruesome or because a witness could orally describe what a photograph depicts. *People v Mills*, 450 Mich 61, 76-78; 537 NW2d 909 (1995). There is no indication that the photographs here were intended for an improper purpose, and although we appreciate that the photographs were disturbing and thus had *some* potential for unfair prejudice, we are simply not persuaded that the danger of unfair prejudice *substantially outweighed* their probative value. In any event, we believe the issue to be a close one, and there is generally no abuse of discretion when the trial court's decision involves a close evidentiary question, *People v Sabin (After Remand)*, 463 Mich 43, 67; 614 NW2d 888 (2000). We do not find the photographs to have been improperly admitted.

Defendant finally argues that trial counsel was ineffective for acquiescing to the admission of the autopsy photographs and failing to present an insanity defense. We disagree.

As discussed, we find no error in the admission of the autopsy photographs. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Defendant cannot establish a reasonable probability that the outcome of the proceeding would have been different had counsel objected. *People v Vaughn*, 491 Mich 642, 671; 821 NW2d 288 (2012).

Pursuant to MCL 768.21a(1), a defendant facing criminal charges may assert legal insanity as an affirmative defense. *People v Carpenter*, 464 Mich 223, 230-231; 627 NW2d 276

(2001). Legal insanity requires a defendant to "lack[] substantial capacity either to appreciate the nature and quality or the wrongfulness of his or her conduct or to conform his or her conduct to the requirements of the law" because of a "mental illness." MCL 768.21a(1). "Mental illness" is defined as "a substantial disorder of thought or mood that significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life." MCL 330.1400(g). A defendant asserting legal insanity as a defense has the burden of proving the defense by a preponderance of the evidence. MCL 768.21a(3); *Carpenter*, 464 Mich at 231.

Clearly, defendant was suffering from a mental illness; his bizarre tangents and statements during his police interview can lead to no other conclusion. It is apparently not disputed that trial counsel was aware that defendant had an extensive history of mental illness including delusions and hallucinations. However, mental illness is merely a prerequisite to an insanity defense. Defendant's statements also make it clear that he was well aware of what he was doing; at most, he was deluded about why. A psychological evaluation was conducted that concluded that defendant was not legally insane at the time of the crimes. The psychologist acknowledged that some of defendant's statements, if taken at face value, cast some doubt on his capacity to appreciate the nature and quality or wrongfulness of his actions, or otherwise to conform his conduct to the requirements of the law. However, defendant's varying accounts demonstrated that he was an unreliable informant, and the psychologist's observation of defendant and review of various records revealed that defendant had a history of manipulation and deceitfulness which suggested that his exculpatory statements may have been consciously designed to avoid prosecution.

Consequently, it does not appear that defense counsel's decision to forgo an insanity defense was objectively unreasonable. See *People v Snider*, 239 Mich App 393, 425; 608 NW2d 502 (2000) (stating that "[t]rial counsel is not required to advocate a meritless position"). Had defense counsel nevertheless asserted an insanity defense at trial, it seems certain that the prosecution would have responded by relying on the psychologist's opinion that defendant was legally sane at the time of the offense. Because defendant's unsupported theory would have been rebutted by a contrary expert opinion, and as noted his own statements were at best equivocally supportive of possible insanity, it is not reasonably probable that the outcome of the trial would have been different had defense counsel advanced an insanity defense. We decline to consider defendant's request, in his supplemental Standard 4 brief, for us to expand the record on appeal to consider additional medical records. MCR 7.219(A)(1); *People v Williams*, 241 Mich App 519, 524 n 1; 616 NW2d 710 (2000). Defendant's supplemental Standard 4 brief appears, in any event, to conflate mental illness, even severe mental illness, with legal insanity. We are not persuaded that there is any reasonable probability that an insanity defense would have been successful if it had been attempted.

Affirmed.

/s/ Michael J. Riordan
/s/ Amy Ronayne Krause
/s/ Brock A. Swartzle