# Syllabus

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

PEOPLE v YEAGER

Docket No. 164055. Argued on application for leave to appeal May 10, 2023. Decided July 27, 2023.

Menayetta M. Yeager was convicted following a jury trial in the Wayne Circuit Court of first-degree murder, MCL 750.316(1)(a), and carrying a firearm during the commission of a felony, MCL 750.227b, in connection with the shooting death of her boyfriend, Jonte Brooks. In 2017, Brooks punched defendant in the face with a gun when defendant informed him, while they were sitting in defendant's minivan, that she no longer wanted to be in a relationship with him. Brooks then pulled defendant out of the van by her hair and repeatedly hit her, after which he got back into defendant's van and used it to chase after her, attempting to run her over before eventually driving away. A neighbor, who witnessed some of the encounter, went over to defendant and agreed to take her to try to retrieve her van. While defendant was talking on her cellphone with Brooks to make those arrangements, Brooks repeatedly threatened to kill both defendant and the neighbor. Ultimately, Brooks pulled into a gas station behind the neighbor's vehicle, defendant got out of the neighbor's vehicle during the continued argument with Brooks, and defendant pulled out a gun and shot at Brooks multiple times. Brooks ultimately died from a bullet wound to his chest; the police later found 17 shell casings at the gas station. At trial, the jury was instructed on first- and second-degree murder only. Defendant appealed her conviction, and the Court of Appeals remanded to the trial court for a *Ginther*[1] hearing to determine whether trial counsel's failure to request an instruction on voluntary manslaughter as a lesser included offense to murder constituted ineffective assistance of counsel. On remand, trial counsel testified that he did not request a voluntary manslaughter instruction because he believed that instruction to be mutually exclusive of the self-defense theory asserted at trial. The court, Kevin Cox, J., concluded that trial counsel erred by not requesting the voluntary manslaughter instruction because, had the instruction been requested, a reasonable juror could have found defendant was guilty of voluntary manslaughter rather than first-degree murder. For that reason, the trial court granted a new trial. After remand, the prosecution cross-appealed the trial court order, arguing that trial counsel was not ineffective, and that even if he was, defendant had not been prejudiced. In a split, unpublished per curiam opinion issued on December 21, 2021 (Docket No. 346074), the Court of Appeals, O'BRIEN, P.J., and CAMERON, J. (BECKERING, J., concurring), relied on *People*

---

[1] *People v Ginther*, 390 Mich 436 (1973).

*v Raper*, 222 Mich App 475 (1997), to reverse the trial court order granting defendant a new trial. Defendant sought leave to appeal, and the Supreme Court ordered and heard oral argument on whether to grant defendant's application or take other action. 509 Mich 984 (2022).

In an opinion by Justice BERNSTEIN, joined by Justices CAVANAGH, WELCH, and BOLDEN, the Supreme Court, in lieu of granting leave to appeal, *held*:

A voluntary manslaughter instruction would have been supported by the evidence presented in this case, and trial counsel's decision not to request the instruction was objectively unreasonable. Because the instructions given did not present to the jury the differing states of mind required for murder and voluntary manslaughter, and because a reasonable jury could have found that defendant acted in the state of mind required for voluntary manslaughter, the failure to instruct prejudiced defendant. Accordingly, defendant was denied the effective assistance of counsel and she was entitled to a new trial.

1. The United States and Michigan Constitutions guarantee criminal defendants the effective assistance of counsel. To establish a claim of ineffective assistance of counsel and obtain a new trial, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different. While attorneys have broad latitude to determine trial strategy, a counsel's strategic decisions must be objectively reasonable. Trial counsel's failure to request a jury instruction may constitute an unreasonably deficient level of performance.

2. A jury instruction on a lesser included offense is appropriate if the charged offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it. Manslaughter is a lesser included offense of murder. For an act to be considered voluntary manslaughter, the defendant must kill in the heat of passion, the passion must be caused by adequate provocation, and there cannot be a lapse of time during which a reasonable person could control their passions. The provocation must be sufficient to cause a reasonable person to lose control, not just the specific defendant. The distinguishing element between manslaughter and murder is malice, which in voluntary manslaughter is negated by the presence of provocation and heat of passion. Because voluntary and involuntary manslaughter are lesser included offenses of murder, when a defendant is charged with murder, an instruction for voluntary and involuntary manslaughter must be given if supported by a rational view of the evidence. In this case, trial counsel's decision not to request an instruction on voluntary manslaughter was objectively unreasonable. Caselaw and M Crim JI 16.9 do not require a defendant to specifically act out of anger for a voluntary manslaughter instruction to be applicable. That is, while the model jury instruction specifically acknowledges anger as an emotional state that may serve to mitigate murder to voluntary manslaughter, the rest of the jury instruction makes clear that the defendant's thinking must have been disturbed by an undefined "emotional excitement." In this case, trial counsel's reason for not requesting the instruction—i.e., that arguing self-defense to a murder charge would render defendant's actions unintentional, which was inconsistent with manslaughter because that charge requires an intentional act—was based on a misunderstanding of the law. A voluntary manslaughter instruction would have been supported by the evidence presented given that defendant's shooting of the victim was the culmination of a series of events that began with the victim physically assaulting defendant, trying to run defendant over with a vehicle, and repeatedly threatening to kill defendant and the neighbor who helped her.

Under these facts, a jury could have reasonably concluded that defendant acted out of heightened emotion rather than reason in shooting the victim. Accordingly, trial counsel's performance fell below an objective standard of reasonableness when he failed to request a voluntary manslaughter instruction to which defendant was entitled.

3. Whether the absence of an instruction on a lesser included offense is harmless—i.e., the absence did not prejudice the defendant—depends on the facts and circumstances of the case. *People v Beach*, 429 Mich 450 (1988), held that a jury's rejection of an intermediate charge does not automatically render harmless the failure to instruct on a lesser offense. To determine whether the failure to instruct was harmless, a reviewing court must consider the specific circumstances of the case in concert with the relevant offenses and ask whether the distinctions between the particular charges suggest that a jury's rejection of an intermediate charge demonstrates that the jury would have been unlikely to select a lesser charge. Some distinctions between charges are implicit in the verdict, such as those that depend on factual findings, and in such cases, it can be definitively determined that the jury would not have opted for a requested lesser offense; however, such a conclusion is not implicit when the charges are distinguished by a legal question, like the defendant's required state of mind, which has not previously been placed before the jury. *Beach*'s explanation of when instruction on a lesser offense is warranted is still good law. Thus, when considering whether a jury should have been instructed on a lesser included offense, an appellate court must consider whether, in light of the proposed defense theory and the factual elements of the relevant offenses, the jury's rejection of the intermediate charge necessarily indicates a lack of likelihood that the jury would have adopted the lesser requested charge. This is consistent with *People v Mendoza*, 468 Mich 527 (2003), which held that manslaughter is a lesser included offense of murder and that manslaughter instructions must be given to the jury if supported by a rational view of the evidence. In this case, defendant was prejudiced by trial counsel's deficient performance. A voluntary manslaughter instruction would have assisted the jury in considering defendant's state of mind at the time of the shooting in a manner not contemplated by first- and second-degree murder instructions alone. Specifically, a jury could have reasonably concluded that defendant's actions were the result of provocation to a state of emotional excitement. Thus, defendant was prejudiced because the jury was not made aware of the lesser included offense of voluntary manslaughter. Stated differently, because the instructions given did not present to the jury the differing states of mind required for murder and voluntary manslaughter, and because a reasonable jury could have found that defendant acted in the state of mind required for voluntary manslaughter, the failure to instruct prejudiced defendant. The jury's finding of premeditation was not an implicit rejection of adequate provocation given that there is no middle-ground *mens rea* in second-degree murder that a jury rejects to find first-degree murder, and the element distinguishing voluntary manslaughter from murder offenses is an element outside of the *mens rea* spectrum.

4. Defendant was entitled to a new trial because she established that counsel's performance fell below an objective standard of reasonableness and that but for counsel's deficient performance, there was a reasonable probability that the outcome would have been different. Accordingly, the Court of Appeals judgment reversing the trial court's grant of a new trial had to be reversed. In addition, the Court of Appeals erred to the extent it determined that *People v Raper*, 222 Mich App 475 (1997), created a bright-line rule under which the absence of a voluntary manslaughter instruction is automatically considered harmless if the jury was instructed on both first- and second-degree murder and convicted the defendant of first-degree murder.

Court of Appeals judgment reversed; case remanded for a new trial.

Chief Justice CLEMENT, joined by Justices ZAHRA and VIVIANO, dissenting, disagreed that defendant was prejudiced by trial counsel's failure to request the voluntary manslaughter instruction. In describing the elements of premeditation and deliberation (first-degree murder) and malice excused (voluntary manslaughter), Michigan caselaw consistently places the terms at opposite ends of the *mens rea* spectrum. The jury's decision here to reject a lesser offense with malice aforethought demonstrates that the jury would not have chosen to convict defendant of a killing resulting from malice that has been excused by the heat of passion. If the jury had reasonable doubts regarding whether defendant deliberated and reflected before murdering Brooks, it would have instead chosen to convict defendant of second-degree murder, which requires malice but no premeditation. This was bolstered by the jury instructions given, which made clear the jury's decision to convict defendant of first-degree murder was an express and knowing repudiation of a finding that defendant acted rashly or in the heat of passion. Depending on the offenses charged, a jury's verdict rejecting an intermediate charge in favor of a greater charge can reveal the jury's legal conclusions—just as it reveals the jury's factual findings. And just as the reviewing court can determine whether the jury's factual finding is contradictory to the factual finding required by the erroneously excluded instruction, the reviewing court can determine whether the jury's legal conclusion is contradictory to the legal conclusion required by the erroneously excluded instruction. The fact that the jury rejected the intermediate offense of second-degree murder and, instead, chose to convict defendant of first-degree premeditated murder, indicated that it was unlikely that the jury would have chosen to convict defendant of the lesser charge of voluntary manslaughter if the instruction had been requested and given. Chief Justice CLEMENT, who assumed without deciding that the majority was correct that defense counsel provided ineffective assistance when it failed to request a voluntary manslaughter jury instruction, would have found that defendant was not entitled to a new trial on the basis of trial counsel's assumed error in not requesting a voluntary manslaughter instruction because defendant could not prove that the error created a reasonable probability of a different result at trial. For that reason, she would have affirmed the judgment of the Court of Appeals.

Justice ZAHRA, joined by Justice VIVIANO, dissenting, joined in full Chief Justice CLEMENT's opinion with regard to her determination that defendant was not prejudiced by trial counsel's failure to request a voluntary manslaughter instruction. However, he would not have assumed without deciding that the majority correctly determined that defense counsel performed deficiently in failing to request that instruction at defendant's murder trial. The majority opinion improperly relied on defendant's ineffective-assistance claim to expand what may qualify as the heat of passion necessary for manslaughter. Had the trial court viewed the case similarly to the way in which trial counsel did, as evidenced by his testimony at the *Ginther* hearing on remand, it would have likely concluded that there was insufficient evidence to support a voluntary manslaughter instruction. Trial counsel's strategic choices should not have been second-guessed because the jury would have likely been confused by a voluntary manslaughter instruction given that defendant also pursued an arguably incompatible self-defense claim.

# OPINION

Chief Justice:　　　　　Justices:
　Elizabeth T. Clement　　Brian K. Zahra
　　　　　　　　　　　　David F. Viviano
　　　　　　　　　　　　Richard H. Bernstein
　　　　　　　　　　　　Megan K. Cavanagh
　　　　　　　　　　　　Elizabeth M. Welch
　　　　　　　　　　　　Kyra H. Bolden

FILED　July 27, 2023

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

　　　　　Plaintiff-Appellee,

v　　　　　　　　　　　　　　　　　　　　　　No. 164055

MENAYETTA MICHELL YEAGER,

　　　　　Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH

BERNSTEIN, J.

In this case, we consider whether defendant was denied the effective assistance of counsel by trial counsel's failure to request a voluntary manslaughter instruction at defendant's jury trial for the murder of her boyfriend. While we agree with the Court of Appeals that trial counsel's representation fell below an objective standard of reasonableness, we disagree with the Court of Appeals as to prejudice and instead conclude that there is a reasonable probability that this error affected the outcome of defendant's

trial.  For that reason, we reverse the judgment of the Court of Appeals and remand to the trial court for proceedings consistent with this opinion.

## I.  FACTUAL AND PROCEDURAL HISTORY

On August 27, 2017, defendant, Menayetta Yeager, and her boyfriend of approximately one year, Jonte Brooks, were seated in her minivan when defendant told Brooks that she wanted to break up.  This set off a series of volatile events.  Brooks, who had exhibited violent tendencies previously in the relationship, punched defendant and hit her in the face with his gun, something defendant testified he regularly carried.  Brooks pulled defendant out of the vehicle by her hair and continued to hit her.  Brooks then got into the driver's seat of defendant's minivan and used it to chase after her, attempting to run her over multiple times before eventually driving away in the van.  Defendant called the police throughout this encounter but did not feel she had a safe place to wait for officers to arrive.

A neighbor, Labarren Borom, witnessed Brooks driving across lawns in an effort to run defendant down.  After Brooks had driven away, Borom approached defendant to ask if she was okay and agreed to take defendant in his truck so defendant could follow Brooks and retrieve her van.  Defendant called Brooks on his cellphone, and Brooks assured her that he would leave the van at a nearby gas station.  However, Brooks never arrived at the designated gas station, and as defendant continued to demand the return of her van over the phone, Brooks repeatedly threatened to kill both defendant and Borom.  Defendant and Borom ultimately pulled into a different gas station, and Brooks pulled in behind them. Brooks and defendant began to argue, and defendant got out of Borom's truck.

2

Defendant testified at trial that her intent was to run away from Brooks upon getting out of the truck and that Borom handed her a gun as she debarked. She then testified that she shot at Brooks two or three times out of fear. Borom's recollection of the incident was that defendant got out of his truck during her argument with Brooks, pulled out a gun, and fired multiple shots, with Brooks pulling away in the van while defendant was still shooting. Borom recalled hearing five or six shots; a gas station employee remembered hearing about 10 shots. Defendant returned to Borom's vehicle, hysterical and crying, and Borom drove her home. Police officers dispatched to the scene of the shooting found Brooks lying unresponsive in the van, crashed into a wall about five blocks away from the gas station, with a bullet wound to the chest. The police retrieved 17 shell casings from the gas station. Brooks was alive when the police arrived on the scene, but he later died at the hospital. His death was ruled a homicide. Defendant turned herself in to the police the following day.

Defendant was charged in the Wayne Circuit Court with first-degree murder, MCL 750.316(1)(a), and carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b. At trial, the jury was instructed on first- and second-degree murder and convicted defendant as charged. She was sentenced to life without parole for the murder conviction, which was to be served consecutively to the mandatory two-year felony-firearm sentence.

On appeal, the Court of Appeals remanded the case to the trial court for a *Ginther*[1] hearing to determine whether defendant had been denied the effective assistance of

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

3

counsel, limited to the question of whether trial counsel's failure to request a jury instruction on voluntary manslaughter as a lesser included offense to murder constituted ineffective assistance. *People v Yeager*, unpublished order of the Court of Appeals, entered November 9, 2020 (Docket No. 346074). At the *Ginther* hearing, trial counsel testified that he had not requested a voluntary manslaughter instruction because he believed it to be mutually exclusive of the self-defense theory he presented at trial. The trial court concluded that, had trial counsel requested a voluntary manslaughter instruction, a reasonable juror could have found that defendant was guilty of voluntary manslaughter rather than first-degree murder. Because the trial court found that there was a reasonable likelihood that the trial outcome would have been different had trial counsel not erred by failing to ask for the voluntary manslaughter instruction, the trial court granted a new trial. The prosecution challenged this ruling, arguing that trial counsel had not been ineffective and that, in any case, defendant had not been prejudiced. The Court of Appeals reversed in an unpublished per curiam opinion. *People v Yeager*, unpublished per curiam opinion of the Court of Appeals, issued December 21, 2021 (Docket No. 346074). Judge BECKERING wrote separately, concurring in the result but opining that *People v Raper*, 222 Mich App 475; 563 NW2d 709 (1997), on which the majority relied, was wrongly decided. *Yeager* (BECKERING, J., concurring), unpub op at 1, 4-7. Defendant sought leave to appeal in this Court, and in lieu of granting leave, we ordered oral argument on the application. *People v Yeager*, 509 Mich 984 (2022).

4

## II. STANDARD OF REVIEW

Whether a defendant has received ineffective assistance of counsel is a mixed question of fact and constitutional law. *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011). " 'A judge must first find the facts, then must decide whether those facts establish a violation of the defendant's constitutional right to the effective assistance of counsel.' " *Id.*, quoting *People v Grant*, 470 Mich 477, 484; 684 NW2d 686 (2004). We review for clear error the trial court's factual findings, and "[w]e review de novo questions of constitutional law." *Armstrong*, 490 Mich at 289.

## III. ANALYSIS

### A. INEFFECTIVE ASSISTANCE OF COUNSEL

At trial, defendant's counsel presented a self-defense theory and did not request a voluntary manslaughter instruction, meaning that the jury was only instructed on the charges of first- and second-degree murder. Whether defendant is entitled to relief in this case turns on whether that decision constituted ineffective assistance of counsel. Criminal defendants are entitled to the assistance of counsel under both the Michigan and United States Constitutions. Const 1963, art 1, § 20; US Const, Am VI. This right guarantees the effective assistance of counsel. *Strickland v Washington*, 466 US 668, 686; 104 S Ct 2052; 80 L Ed 2d 674 (1984). In order to obtain a new trial because of ineffective assistance of counsel, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that that outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). " 'A reasonable probability is a

5

probability sufficient to undermine confidence in the outcome.' " *People v Ackley*, 497 Mich 381, 389; 870 NW2d 858 (2015), quoting *Strickland*, 466 US at 694.

Generally, attorneys are given broad latitude to determine trial strategy, and there is a strong presumption that counsel's performance was born from sound strategy. *Strickland*, 466 US at 689-690. However, counsel's strategic decisions must be objectively reasonable. *Trakhtenberg*, 493 Mich at 52.

## B. VOLUNTARY MANSLAUGHTER

Defendant's position here is that trial counsel erred by failing to request a jury instruction on voluntary manslaughter. This Court has defined voluntary manslaughter as follows:

> [I]f the act of killing, though intentional, be committed under the influence of passion or in heat of blood, produced by an adequate or reasonable provocation, and before a reasonable time has elapsed for the blood to cool and reason to resume its habitual control, and is the result of the temporary excitement, by which the control of reason was disturbed, . . . then the law, out of indulgence to the frailty of human nature, . . . regards the offense as of a less heinous character than murder, and gives it the designation of manslaughter. [*Maher v People*, 10 Mich 212, 219 (1862).]

That is, for an act to be considered voluntary manslaughter, the defendant must kill in the heat of passion, the passion must be caused by adequate provocation, and there cannot be a lapse of time during which a reasonable person could control their passions. The provocation must be sufficient to cause the defendant to act out of passion rather than reason, but it also must be sufficient to cause a reasonable person to lose control, not just the specific defendant. *People v Pouncey*, 437 Mich 382, 389; 471 NW2d 346 (1991).

In *People v Mendoza*, 468 Mich 527, 536; 664 NW2d 685 (2003), this Court explained that manslaughter is a lesser included offense of murder. Both murder and

6

voluntary manslaughter "require a death, caused by defendant, with either an intent to kill, an intent to commit great bodily harm, or an intent to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result." *Id*. at 540. The distinguishing element is malice, which in voluntary manslaughter is "negated by the presence of provocation and heat of passion." *Id*. Involuntary manslaughter, by contrast, contemplates a lesser degree of intent. *Id*. at 541. The *Mendoza* Court concluded that, because both voluntary and involuntary manslaughter are necessarily included lesser offenses and "inferior" to murder under MCL 768.32, "when a defendant is charged with murder, an instruction for voluntary and involuntary manslaughter must be given if supported by a rational view of the evidence." *Id*.

## C. APPLICATION
### 1. COUNSEL'S PERFORMANCE

In assessing whether defendant received ineffective assistance of counsel, we first consider whether trial counsel's failure to request a voluntary manslaughter instruction was objectively unreasonable. Trial counsel's failure to request a jury instruction may constitute an unreasonably deficient level of performance. See *People v Leffew*, 508 Mich 625, 646; 975 NW2d 896 (2022) (holding that the defense attorneys' failure to request a defense-of-others instruction supporting their theory of the case was objectively unreasonable). We have held that a jury instruction on a necessarily included lesser offense is appropriate if "the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it." *People v Cornell*, 466 Mich 335, 357; 646 NW2d 127 (2002).

7

In this case, we agree with the lower courts that trial counsel's decision not to request an instruction on voluntary manslaughter was objectively unreasonable. Trial counsel's explanation for this omission at the *Ginther* hearing was that defendant's theory of the case was self-defense, and trial counsel "[did not] believe, in any way, [defendant] intended, as a manslaughter instruction would ask for, in any kind of way, voluntary or involuntary, to kill the deceased." In other words, trial counsel appears to have believed that arguing self-defense to a murder charge would render defendant's actions unintentional and that a manslaughter instruction would not be applicable because only manslaughter would require an intentional act. However, this reasoning is inconsistent or based on a misunderstanding of the law. Murder as mitigated by self-defense and voluntary manslaughter are not distinguished by the element of intent because both contemplate an intentional action. See *People v Dupree*, 486 Mich 693, 707; 788 NW2d 399 (2010) (" 'A finding that a defendant acted in justifiable self-defense necessarily requires a finding that the defendant acted intentionally, but that the circumstances justified his actions.' "), quoting *People v Heflin*, 434 Mich 482, 503; 456 NW2d 10 (1990). Rather, the distinction between murder and voluntary manslaughter is the element of malice, which in voluntary manslaughter is "negated by the presence of provocation and heat of passion." *Mendoza*, 468 Mich at 540. Because trial counsel failed to appreciate the meaningful difference between the two charges, his explanation for why he failed to pursue a manslaughter instruction is legally incorrect.

Moreover, a review of the facts of this case demonstrates that the voluntary manslaughter instruction would have been supported by the evidence presented. The testimony presented at trial reflected that defendant's shooting of Brooks was the

8

culmination of a series of events during which Brooks physically assaulted defendant, took her car and used it to attempt to run her over, and repeatedly threatened to kill defendant and Borom, the neighbor who assisted her. Defendant testified that she feared for her life. At the *Ginther* hearing, when asked about the moments leading up to the shooting, she explained, "I just remembered bein' scared. I don't remember details, like, walkin' towards him, or anything like that. And when I seen the video, I didn't even see myself, or remember shootin' as many times as they say I did." Borom also testified that defendant was hysterical and crying when she returned to his vehicle after the shooting. A jury could reasonably conclude that the combination of physical and verbal threats from Brooks throughout this unbroken chain of events stoked defendant's passions so that she acted out of heightened emotion rather than reason in shooting Brooks.

We do not find persuasive the argument that defendant specifically needed to act out of anger for a voluntary manslaughter instruction to be applicable. Our caselaw does not circumscribe the requisite emotional state for voluntary manslaughter in this fashion. See *Maher*, 10 Mich at 219 (referring to "influence of passion or in heat of blood"). Nor do our model jury instructions suggest any such requirement. Rather, the Michigan Model Criminal Jury Instruction regarding voluntary manslaughter as a lesser included offense provides:

> (1) The crime of murder may be reduced to voluntary manslaughter if the defendant acted out of passion or anger brought about by adequate cause and before the defendant had a reasonable time to calm down. For manslaughter, the following two things must be present:
>
> (2) First, when the defendant acted, [his / her] thinking must be disturbed by emotional excitement to the point that a reasonable person might have acted on impulse, without thinking twice, from passion instead of judgment. This emotional excitement must have been the result of something

9

that would cause a reasonable person to act rashly or on impulse. The law does not say what things are enough to do this. That is for you to decide.

> (3) Second, the killing itself must result from this emotional excitement. The defendant must have acted before a reasonable time had passed to calm down and return to reason. The law does not say how much time is needed. That is for you to decide. The test is whether a reasonable time passed under the circumstances of this case. [M Crim JI 16.9.]

While the model jury instruction specifically acknowledges anger as an emotional state that may serve to mitigate murder to voluntary manslaughter, the rest of the jury instruction makes clear that the defendant's thinking must have been disturbed by an undefined "emotional excitement." As Judge BECKERING stated of the emotional series of events culminating in defendant's shooting of Brooks, "If ever there were a heat of passion case, this is it." *Yeager* (BECKERING, J., concurring), unpub op at 1.

Justice ZAHRA would hold that trial counsel's performance was not deficient, but the only rationale offered is trial counsel's *Ginther* hearing testimony that he believed defendant had reasonable time to calm down. Based on this, Justice ZAHRA concludes that whether the trial court would have given the voluntary manslaughter instruction is "speculative." This reasoning is puzzling. Trial counsel may well have believed defendant had a reasonable amount of time to calm down, but trial counsel's subjective feelings are not dispositive as to what a reasonable jury could conclude. Further, as reflected by his *Ginther* hearing testimony, trial counsel did not understand the relevant law—information that was not available to the trial court at the time of the trial. Justice ZAHRA proceeds to engage in speculation of his own, saying, "Had the trial court viewed the case similarly, it likely would have concluded that there was insufficient evidence to support a voluntary manslaughter instruction." *Post* at 3. But this thought experiment stands at odds with what

10

we know the trial court thought about defendant's state of mind. In granting the motion for a new trial, the trial court said:

> The Court finds as a fact, that, uhm, before the shooting, Ms. Yeager was emotionally excited.
>
> She had heighted emotions.
>
> She was stressed.
>
> She was not calm when she shot the gun.

Not only is Justice ZAHRA's argument speculative, it is directly contrary to the record.

Because a rational view of the evidence would support a voluntary manslaughter instruction, that instruction should have been given. *Mendoza*, 468 Mich at 541. However, an instruction was not requested and thus was not given. Because trial counsel's misunderstanding of the law led to the absence of a voluntary manslaughter instruction to which defendant was entitled, we conclude that trial counsel's performance fell below the objective standard of reasonableness required by *Strickland*.

## 2. PREJUDICE

Having determined that trial counsel's performance was constitutionally deficient, we turn to the second prong of the ineffective-assistance analysis: whether defendant was prejudiced by trial counsel's deficient performance. The trial court concluded that defendant had been prejudiced by trial counsel's performance here and was thus entitled to a new trial, but the Court of Appeals reversed this judgment and concluded that defendant could not establish prejudice because, under *Raper*, 222 Mich App 475, any error in failing to instruct the jury on voluntary manslaughter was harmless given that the jury rejected a verdict of second-degree murder in favor of a first-degree murder conviction. We disagree

11

with the Court of Appeals' conclusion on this point and further hold that defendant was prejudiced by her trial counsel's deficient representation.

We first conclude that the Court of Appeals erred by determining that its decision in this case was mandated by the judgment in *Raper*. That case involved a defendant who was convicted of first-degree murder, carjacking, and felony-firearm. *Id*. at 476. The defendant confessed to shooting the victim and taking his automobile at the direction of a third individual. *Id*. at 477. Alongside other arguments not relevant to the case before us, the defendant argued that his trial counsel had been ineffective for failing to request jury instructions on the lesser included offenses of both voluntary and involuntary manslaughter. *Id*. at 483. The *Raper* Court disposed of this argument with little fanfare or analysis, stating:

> In this case, defendant was charged with first-degree murder. The jury was instructed on first-degree murder and second-degree murder, and found defendant guilty of first-degree murder. The jury's rejection of second-degree murder in favor of first-degree murder reflected an unwillingness to convict on a lesser included offense such as manslaughter. *People v Zak*, 184 Mich App 1, 16; 457 NW2d 59 (1990). [*Raper*, 222 Mich App at 483.]

The Court of Appeals here concluded that the trial outcome of the instant case was "identical to the situation in *People v Raper*[.]" *Yeager* (opinion of the Court), unpub op at 9. Judge BECKERING agreed that *Raper* controlled the outcome in the instant case but expressed concerns that the Court of Appeals' "holding in *Raper* inappropriately precludes relief to defendants for the failure to provide a voluntary manslaughter instruction in cases in which the jury chooses first-degree murder instead of second-degree murder." *Yeager* (BECKERING, J., concurring), unpub op at 3. We conclude that the Court of Appeals'

12

reading of *Raper* misconstrues the existing caselaw regarding jury instructions on lesser offenses.

This Court has consistently held that whether the absence of an instruction on a lesser included offense is harmless depends on the facts and circumstances of the case at bar. In *People v Beach*, 429 Mich 450, 491-492; 418 NW2d 861 (1988), which involved whether a defendant who was convicted of conspiracy to commit armed robbery was entitled to have the jury instructed on the lesser included offense of conspiracy to commit larceny in a building, this Court set forth an explanation of the relevant law:

> The existence of an intermediate charge that was rejected by the jury does not, of course, automatically result in an application of the [*People v Ross*, 73 Mich App 588; 252 NW2d 526 (1977)] analysis. For it to apply, the intermediate charge rejected by the jury would necessarily have to indicate a lack of likelihood that the jury would have adopted the lesser requested charge.

> We note that our recent cases, which did not adopt or apply the harmless error analysis, are distinguishable. In *People v Richardson*, [409 Mich 126; 293 NW2d 332 (1980)], the Court declined to apply a harmless error analysis because the refusal to instruct was reasoned to foreclose the jury's option to convict the defendant consistently with his own testimony, evidence, and theory. *Beach* differs because the defense theory was alibi, and no evidence to make a theory of larceny essential to the defense was provided, that is, there was no specific denial of the use of force. There was only an alibi defense and an inference built on a possibility that the jury might disbelieve part of Turner's testimony.

> In *People v Rochowiak*, [416 Mich 235; 330 NW2d 669 (1982)], the opinion of the Court offered qualifications regarding the finding of harmless error under such circumstances. Although we do not adopt the qualifications, we note that this case complies with the suggestions for finding harmless error.

> > As in *Richardson*, we do not hold that failure to give lesser offense instructions can never be harmless. The error may indeed be harmless in a case where it is clear that the jury was presented with a lesser offense or offenses *consistent with*

13

*the defendant's theory* which was rejected, and made findings of fact, implicit in the verdict, which would preclude conviction of the charge upon which an instruction was refused, or *where the differences between the various offenses concern factual elements, the existence of a weapon (armed or non-armed)*, the completion of the offense (attempt), *the use of force (larceny or robbery)* and not the state of mind of the defendant (murder, manslaughter, reckless use; assault with intent to murder, with intent to commit great bodily harm less than murder, felonious assault). [416 Mich 248-249. Emphasis added.][2]

Under *Beach*, then, there is no support for the notion that the existence of a rejected intermediate charge automatically renders harmless the failure to instruct on a lesser offense.[3] Rather, a reviewing court must consider the specific circumstances of the case in concert with the relevant offenses and ask whether the distinctions between the particular charges suggest that a jury's rejection of an intermediate charge demonstrates that the jury would have been unlikely to select a lesser charge. The *Rochowiak* opinion cited in *Beach* noted that some distinctions between charges are implicit in the verdict, such as those that depend on factual findings, and in such cases, it can be definitively determined that the jury would not have opted for a requested lesser offense. In *Beach*, for example, the jury's decision to convict the defendant of conspiracy to commit armed robbery, rather than conspiracy to commit unarmed robbery, necessarily implied "a finding of a use of a weapon

---

[2] Final bracketed citation in original and emphasis added by *Beach*.

[3] We acknowledge that *Beach* involved requests for instruction on cognate lesser offenses that were rejected by the trial court. Although this procedural posture differs from the situation here, in which trial counsel failed to request instruction on a necessarily included lesser offense, we nevertheless find the harmless-error analysis set forth in *Beach* instructive. We do not, however, extend *Beach*'s harmless-error analysis to lesser-offense instructional errors made by the trial court rather than counsel, a question left unaddressed by *Beach*.

14

which indicates a greater use of force than would be the case in [the requested lesser offense of] unarmed robbery." *Beach*, 429 Mich at 492. However, such a conclusion is not implicit when the charges are distinguished by a legal question like the defendant's required state of mind that has not previously been placed before the jury. The question in this case, whether the jury's rejection of a second-degree murder intermediate charge in favor of a conviction of first-degree murder indicates a likelihood that the jury would not have opted to convict defendant of the lesser charge of voluntary manslaughter, requires us to consider the distinctions between these charges—distinctions centered, as explained further below, on defendant's state of mind.

The *Raper* Court did not cite *Beach* but instead relied on the Court of Appeals decision in *Zak*, 184 Mich App 1, which echoed this case-specific approach in reaching its conclusion that the defendant was not prejudiced by the trial court's refusal to give an instruction on manslaughter because "the failure to instruct on that requested lesser included offense is harmless if the jury's verdict reflects an unwillingness to have convicted on the offense for which instructions were not given." *Id*. at 16, citing *Beach*, 429 Mich at 491. We assume without deciding that *Raper* was, consistently with the rule of *Beach*, decided on the basis of that panel's review of the particular circumstances of that case and the jury instructions requested by the defendant. Indeed, there is no indication in *Raper* that the facts of the case implicated the legal distinctions between the murder charge of which the defendant was convicted and the voluntary and involuntary manslaughter instructions he sought, as the facts of this case do. The Court of Appeals here erred to the extent that it concluded that *Raper* created a bright-line rule under which the absence of a voluntary manslaughter instruction is automatically considered harmless if the jury was

15

instructed on both first- and second-degree murder and convicted the defendant of first-degree murder. We clarify that *Beach*'s explanation of when instruction on a lesser offense is warranted is still good law and that when considering whether a jury should have been instructed on a lesser included offense, appellate courts must consider whether, in light of the proposed defense theory and the factual elements of the relevant offense, "the intermediate charge rejected by the jury would necessarily have to indicate a lack of likelihood that the jury would have adopted the lesser requested charge." *Beach*, 429 Mich at 491. This is consistent with the *Mendoza* Court's conclusion that manslaughter is a necessarily included lesser offense of murder and that manslaughter instructions must be given to the jury if supported by a rational view of the evidence. *Mendoza*, 468 Mich at 541.

In the instant case, the jury was instructed on first- and second-degree murder but not on voluntary manslaughter. First- and second-degree murder both include the element of malice aforethought. *Id*. at 534. As noted in Part III(B) of this opinion, the distinction between murder and voluntary manslaughter is whether an intentional killing was provoked in a manner that explains or justifies the killing so as to mitigate criminal responsibility. *Id*. at 540. We agree with defendant that the voluntary manslaughter instruction would have assisted the jury in considering defendant's state of mind at the time of the shooting in a manner not contemplated by instructions on first- and second-degree murder alone. As already discussed in reference to trial counsel's performance, defendant shot Brooks in the culmination of a prolonged series of events in which defendant was physically and verbally threatened, including when Brooks attempted to run defendant down with her own vehicle. A jury could reasonably conclude that defendant's actions were the result of

16

provocation to a state of emotional excitement, but the jury here was not made aware of the lesser included offense of voluntary manslaughter. The jury instructions regarding first- and second-degree murder and self-defense do not encompass the distinct state of mind required for a voluntary manslaughter conviction. In the absence of instruction on the particular state of mind required for voluntary manslaughter, we cannot definitively conclude whether the jury would have determined that defendant's actions were provoked by inflamed passions or emotional excitement. Therefore, the absence of the lesser-included-offense instruction does not "necessarily . . . indicate a lack of likelihood that the jury would have adopted the lesser requested charge." *Beach*, 429 Mich at 491. Because the instructions given here did not present to the jury the differing states of mind required for murder and voluntary manslaughter, and because a reasonable jury could have found that defendant acted in the state of mind required for voluntary manslaughter, we conclude that this gap in information provided to the jury is "sufficient to undermine confidence in the outcome" of defendant's trial. *Ackley*, 497 Mich at 389 (quotation marks and citation omitted).

We disagree with Chief Justice CLEMENT's contention that although the jury was not instructed on voluntary manslaughter there is no prejudice because a rejection of adequate provocation is implicit in the finding of premeditation in first-degree murder.

Chief Justice CLEMENT asserts that premeditation and deliberation and malice excused are "terms at opposite ends of the *mens rea* spectrum." *Post* at 5. But this characterization is flawed because there is no middle-ground *mens rea* in second-degree murder that a jury rejects to find first-degree murder, and the element distinguishing

voluntary manslaughter from murder offenses is an element outside of the *mens rea* spectrum.

A conviction of first-degree murder does not amount to rejection of any of the elements of second-degree murder. To the contrary, a conviction of first-degree murder requires a finding of all the elements of second-degree murder, plus an additional element. First-degree murder is defined by statute. MCL 750.316. Murder may be elevated to the first degree by certain attendant circumstances found in MCL 750.316(1)(b) or (1)(c) not relevant here, or if it is "perpetrated by means of poison, lying in wait, or any other willful, deliberate, and premeditated killing." MCL 750.316(1)(a). Premeditation is the theory of first-degree murder in this case. Therefore, the jury found each element of second-degree murder in addition to premeditation. The *mens rea* of second-degree murder—malice—is also present in first-degree murder and thus was not rejected by the jury. Voluntary manslaughter likewise does not require an absence of malice; rather, the presence of adequate provocation excuses malice. Because first- and second-degree murder are not distinguished by *mens rea*, the jury's finding of malice does not speak to what the jury might have done were it instructed on adequate provocation.

Chief Justice CLEMENT also argues that premeditation and adequate provocation are mutually exclusive, reasoning that a defendant cannot " 'think about beforehand' and 'measure and evaluate the major facets of a choice or problem,' . . . while nonetheless being ' " 'disturbed or obscured by passion,' " ' rendering the defendant ' " 'liable to act rashly or without due deliberation or reflection, and from passion and lack of reason rather than from judgment[.]' " ' " *Post* at 6 (citations omitted). This argument is logically distinguishable from that of a spectrum of *mens rea*. If premeditation and adequate

18

provocation were mutually exclusive, then a finding of premeditation would require a finding of an absence of adequate provocation. But even that would not mean that there is no prejudice here. Put simply, the jury's finding of premeditation does not necessarily mean that it would have found an absence of adequate provocation had it been properly instructed.

It will always be the case that conviction of a greater offense requires rejection of lesser included offenses. If conviction of a greater offense alone were sufficient to render an instructional error harmless, failure to instruct on a lesser included offense would never result in error requiring reversal. But that is not the case. See *People v Phillips*, 385 Mich 30, 36; 187 NW2d 211 (1971) ("If evidence has been presented which would support a conviction of a lesser offense, refusal to give the requested instruction is reversible error . . . ."). The reason a failure to instruct on a lesser included offense results in error requiring reversal is because it is impossible to know what a jury would do if it had been properly apprised of the lesser included offense.

*Beach* presented a novel circumstance in which the jury had the opportunity to convict on either conspiracy to commit armed robbery or conspiracy to commit unarmed robbery, but not on conspiracy to commit larceny. The jury's rejection of the intermediate offense was what rendered the error harmless, answering the question of what the jury might have done with a choice. As discussed, the jury here was never instructed on the possible legal import of defendant's mental state in light of Brooks's physical and verbal assaults and attempts to run defendant down. The jury's rejection of second-degree murder therefore does not answer the question of what the jury might have done had it been instructed on voluntary manslaughter.

19

Because defendant has established both prongs of the ineffective-assistance-of-counsel analysis, we conclude that defendant is entitled to relief in the form of a new trial.

## IV. CONCLUSION

For the foregoing reasons, we conclude that trial counsel was constitutionally ineffective in failing to request a jury instruction on voluntary manslaughter and that defendant is accordingly entitled to a new trial. We reverse the judgment of the Court of Appeals and remand the case to the Wayne Circuit Court for further proceedings consistent with this opinion.

Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

20

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v                                        No. 164055

MENAYETTA MICHELL YEAGER,

       Defendant-Appellant.

_____

CLEMENT, C. J. (*dissenting*).

I respectfully dissent. Assuming without deciding that the majority is correct that defense counsel performed deficiently in failing to request a voluntary manslaughter instruction at defendant's murder trial, I disagree that there is a reasonable probability that this error affected the outcome of the trial. Accordingly, I would have affirmed the judgment of the Court of Appeals.

To succeed on a claim of ineffective assistance of counsel, defendant must prove both that defense counsel's performance fell below an objective standard of reasonableness and that a "reasonable probability" exists that, but for this deficient performance, "the result of the proceeding would have been different." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001). As applied to the facts of this case, the latter inquiry asks whether there is a reasonable probability that the result of the trial would have been different had defense counsel requested a voluntary manslaughter jury instruction.

In this case, defendant was charged with first-degree premeditated murder and the jury was instructed on both first- and second-degree murder. The jury found defendant

guilty as charged—in other words, it was unpersuaded that defendant was only guilty of the lesser included offense of second-degree murder. Central to an analysis whether defendant was prejudiced by the failure to instruct on voluntary manslaughter is whether the jury's decision to reject the intermediate offense of second-degree murder necessarily demonstrates that the jury also would have been unwilling to convict defendant of the lesser offense of voluntary manslaughter.

This Court previously set forth this standard to answer the prejudice question in *People v Beach*, 429 Mich 450, 452; 418 NW2d 861 (1988). Just as we do here, this Court in *Beach* considered when the erroneous failure to instruct the jury on a lesser included offense results in prejudice to a defendant. There, the jury convicted the defendant of conspiracy to commit armed robbery and rejected the lesser included offense of conspiracy to commit unarmed robbery. *Id*. at 481. On appeal, the defendant successfully argued that the trial court erred by rejecting his request to also instruct the jury regarding conspiracy to commit larceny in a building, a separate, lesser offense that (unlike either form of robbery) does not require the use or threat of force. *Id*. at 485-490. However, this Court ultimately determined that the error did not entitle the defendant to relief, reasoning that

> [i]f the jury had doubts about [the defendant's] guilt of the charged offense or if it concluded that the defendant was not planning to use force, it could have and undoubtedly would have, found her guilty of the instructed lesser included offense of conspiracy to commit unarmed robbery, which would represent a lesser use of force. Because it did not do so, we can conclude that it had no reasonable doubt as to the defendant's guilt of conspiracy to commit armed robbery. We believe that the jury's decision is a reasonable indication that the failure to give an instruction on the lesser included offense of conspiracy to commit larceny in a building was not prejudicial to the defendant. [*Id*. at 490-491.]

In other words, the jury's rejection of the intermediate offense of conspiracy to commit unarmed robbery demonstrated the jury's belief that defendant not only conspired to use force or the threat of force in the theft (i.e., conspired to commit a robbery), but conspired to do so while armed. Because the jury chose to convict the defendant of an offense that requires a *greater* use of force than the offense it rejected, it is highly unlikely that the jury would have chosen to convict on a lesser offense that *lacks* force. *Id*. at 492. Accordingly, the defendant suffered no prejudice from the trial court's failure to instruct the jury regarding the larceny offense. *Id*.

While holding that the defendant was not prejudiced in *Beach*, this Court emphasized that a jury's rejection of an intermediate charge does not *automatically* render the erroneous failure to instruct on a lesser offense prejudicial. *Id*. at 491. Instead, for such error to be prejudicial, "the intermediate charge rejected by the jury would necessarily have to indicate a lack of likelihood that the jury would have adopted the lesser requested charge." *Id*.

Applying that standard to the case at hand, this Court is asked to determine whether the second-degree murder charge rejected by the jury necessarily indicates a lack of likelihood that the jury would have adopted the voluntary manslaughter charge. To answer this question, it is necessary to first examine the three offenses at issue: first-degree premediated murder; second-degree murder; and voluntary manslaughter. "The elements of first-degree murder are (1) the intentional killing of a human (2) with premeditation and deliberation." *People v Bass*, 317 Mich App 241, 265-266; 893 NW2d 140 (2016) (quotation marks and citation omitted). See also MCL 750.316(1)(a) (defining first-degree murder as "any willful, deliberate, and premeditated killing"). "[T]o premeditate is to think

3

about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem." *People v Oros*, 502 Mich 229, 240; 917 NW2d 559 (2018) (quotation marks and citation omitted). The existence of premeditation and deliberation can be established "by an interval of time between the initial homicidal thought and ultimate action, which would allow a reasonable person time to subject the nature of his or her action to a 'second look.' " *Id*. at 242 (citation omitted).

Next, second-degree murder does not require proof of premeditation and deliberation; it is the catch-all for all other types of murder. See MCL 750.317. Second-degree murder is demonstrated through proof of: "(1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse." *People v Goecke*, 457 Mich 442, 463-464; 579 NW2d 868 (1998). Malice can be established through proof of (1) the intent to kill, (2) the intent to cause great bodily harm, or (3) the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm. *Id*. at 464. See also *People v Dykhouse*, 418 Mich 488, 495; 345 NW2d 150 (1984) (phrasing the final form of malice as "the intent to create a very high risk of death or great bodily harm with the knowledge that death or great bodily harm is the probable result"). Finally, voluntary manslaughter shares the same elements as second-degree murder, except that malice "is negated by the presence of provocation and heat of passion." *People v Mendoza*, 468 Mich 527, 540; 664 NW2d 685 (2003).

Again, pursuant to *Beach*, the failure to instruct the jury regarding voluntary manslaughter did not prejudice defendant so long as the jury's decision to reject the second-degree murder charge in favor of finding defendant guilty of premeditated, first-degree murder necessarily indicates a lack of likelihood that the jury would have instead found

4

defendant guilty of voluntary manslaughter. See *Beach*, 429 Mich at 491. Incorporating the legal standards at issue, defendant was not prejudiced if the jury's finding that defendant not only killed Brooks with malice aforethought (second-degree murder) but did so with premeditation and deliberation (first-degree, premeditated murder) demonstrates an unlikelihood that the jury would have found that defendant committed voluntary manslaughter (second-degree murder with malice excused).

I submit that the jury's verdict demonstrates such an unlikelihood.[1] In describing the elements of premeditation and deliberation (first-degree murder) and malice excused (voluntary manslaughter), Michigan caselaw consistently places the terms at opposite ends of the *mens rea* spectrum. See, e.g., *People v Younger*, 380 Mich 678, 682; 158 NW2d 493 (1968) ("[T]he nature and quality of the act of homicide first must be examined to determine whether it is that of an ordinary man responding to the heat of passion or that of an ordinary man functioning with deliberation."); *People v Townes*, 391 Mich 578, 590; 218 NW2d 136 (1974) ("A defendant properly convicted of voluntary manslaughter is a person who has acted out of a temporary excitement induced by an adequate provocation

---

[1] The Court of Appeals has previously reached the same conclusion under analogous facts in *People v Zak*, 184 Mich App 1; 457 NW2d 59 (1990) (although we cite this case as *People v Zak*, the facts and analysis relevant here were at issue in the companion case, *People v Anderson*, which was decided in the same opinion), and *People v Raper*, 222 Mich App 475; 563 NW2d 709 (1997). In both *Zak* and *Raper*, the juries were instructed on first- and second-degree murder, and the juries convicted the defendants of first-degree murder. *Zak*, 184 Mich App at 16; *Raper*, 222 Mich App at 483-484. On appeal, the defendants argued that the juries also should have been instructed regarding manslaughter, but the Court succinctly concluded in both cases that any error in failing to so instruct the juries was harmless because the juries' rejection of second-degree murder reflected an unwillingness to convict on manslaughter charges. *Zak*, 184 Mich App at 16; *Raper*, 222 Mich App at 483-484. However, neither *Zak* nor *Raper* details how the Court reached this conclusion, somewhat limiting their usefulness here.

and not from deliberation and reflection that marks the crime of murder."). Premeditation and deliberation is inherently incompatible with malice excused. How can a defendant "think about beforehand" and "measure and evaluate the major facets of a choice or problem," *Oros*, 502 Mich at 240-241 (quotation marks and citation omitted), while nonetheless being " 'disturbed or obscured by passion,' " rendering the defendant " 'liable to act rashly or without due deliberation or reflection, and from passion and lack of reason rather than from judgment,' " *People v Droste*, 160 Mich 66, 79; 125 NW 87 (1910)? Like the *Beach* jury's decision rejecting an intermediate offense with a lesser amount of force demonstrating that the jury would not have chosen to convict on an offense completely lacking force, the jury's decision here to reject a lesser offense with malice aforethought demonstrates that the jury would not have chosen to convict defendant of a killing resulting from malice that has been excused by the heat of passion. If the jury had reasonable doubts regarding whether defendant deliberated and reflected before murdering Brooks, it would have instead chosen to convict defendant of second-degree murder, which requires malice but no premeditation.

Further, the jury instructions given in this case make clear that the jury's decision to convict defendant of first-degree murder was an express and knowing repudiation of a finding that defendant acted rashly or in the heat of passion. In discussing the element of premeditation and deliberation, the jury instructions provided:

> Fourth, that the killing was deliberate, which means that the defendant considered the pros and cons of the killing, and thought about, and chose her actions before she did it.

> There must have been real and substantial reflection for long enough to give a reasonable person a chance to think twice about the intent to kill.

The law does not say how much time is needed.

It is for you to decide if enough time passed, under the circumstances of this case.

The killing cannot be the result of a sudden impulse, without thought or reflection.

Fifth, that the crime was not justified, excused, or done under circumstances that reduce it to a lesser crime.

Again, in choosing to convict defendant of first-degree premeditated murder, the jury explicitly rejected a finding that the killing was the result of a sudden impulse. Because the jury chose the escalated *mens rea* of first-degree murder requiring premeditation and rejected an intermediate *mens rea* of second-degree murder requiring only malice, the jury's verdict necessarily indicates a lack of likelihood that the jury would have instead chosen the *mens rea* of voluntary manslaughter of excused malice.

In coming to the opposite conclusion, the majority differentiates between cases in which the jury's verdict depended on factual findings and those in which the jury's verdict depended on conclusions of law. Specifically, the majority reasons that in cases in which the jury's verdict depended on factual findings, "it can be definitively determined that the jury would not have opted for a requested lesser offense," but concludes that "such a conclusion is not implicit when the charges are distinguished by a legal question like the defendant's required state of mind . . . ." *Ante* at 14-15. But the majority fails to explain why it cannot be definitively determined that a jury would not have opted for a requested lesser offense when a legal conclusion like *mens rea* is at issue.[2] Depending on the offenses

---

[2] In its discussion of the rule of law at issue, the majority quotes *Beach*'s discussion of *People v Rochowiak*, 416 Mich 235, 248-249; 330 NW2d 669 (1982) (opinion by LEVIN, J.), a nonbinding opinion (Justice KAVANAGH concurred with Justice LEVIN's lead opinion, while Justice WILLIAMS concurred in the result only. Chief Justice FITZGERALD concurred

7

charged, a jury's verdict rejecting an intermediate charge in favor of a greater charge can reveal the jury's legal conclusions—just as it reveals the jury's factual findings. And just as the reviewing court can determine whether the jury's factual finding is contradictory to the factual finding required by the erroneously excluded instruction, the reviewing court can determine whether the jury's legal conclusion is contradictory to the legal conclusion required by the erroneously excluded instruction. One could argue that the jury could have a more limited understanding of the nuances attendant to legal conclusions, making its decision in that regard less identifiable, but—at least in this case—that is not true. The jury here was specifically instructed that a finding of premeditation and deliberation meant that the killing "cannot be the result of a sudden impulse, without thought or reflection"— which is what would have been required for the jury to find defendant guilty of voluntary manslaughter. For example, the majority reasons that "[a] jury could reasonably conclude that defendant's actions were the result of provocation to a state of emotional excitement," *ante* at 16-17, but *this* jury—which found that "the defendant considered the pros and cons of the killing, and thought about, and chose her actions before she did it," "th[ought] twice about the intent to kill," did not act on "a sudden impulse, without thought or reflection,"

---

with Justice RYAN's dissent, and two justices did not participate in the decision). Justice Levin's lead opinion in *Rochowiak* listed examples of cases in which the erroneous failure to give a lesser-offense instruction could be harmless, including cases in which "the differences between the various offenses concern factual elements . . . ." *Id*. at 248. He then differentiated those cases from those that concern "the state of mind of the defendant . . . ." *Id*. at 249. But in *Beach*, when this Court specifically quoted this portion of *Rochowiak*, it expressly chose not to adopt these examples. *Beach*, 429 Mich at 491. Accordingly, to the extent the majority relies on this statement from *Rochowiak*, it is not binding.

8

and that her actions were not "justified" or "excused"—would not have reached that conclusion.

In sum, I believe that the jury's rejection of second-degree murder and choice to convict defendant of first-degree premeditated murder necessarily indicates that the jury would not have chosen to convict defendant of voluntary manslaughter. Accordingly, assuming without deciding that the majority is correct that defense counsel rendered deficient performance in failing to request a voluntary manslaughter jury instruction, I would have found that defendant is not entitled to relief based on this error because she cannot prove that the error created a reasonable probability of a different result at trial. Instead, I would have affirmed the disposition of the Court of Appeals.

> Elizabeth T. Clement
> Brian K. Zahra
> David F. Viviano

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                     No. 164055

MENAYETTA MICHELL YEAGER,

      Defendant-Appellant.

_____

ZAHRA, J. (*dissenting*).

With one exception, I join in full Chief Justice CLEMENT's dissenting opinion that would affirm the jury's verdict finding defendant, Menayetta Yeager, guilty of first-degree premeditated murder. I would not, however, "[a]ssum[e] without deciding that the majority is correct that defense counsel performed deficiently in failing to request a voluntary manslaughter instruction at defendant's murder trial." I need not do so because "Michigan constitutional law has long held that '[e]rrors which cannot possibly create any prejudice to the rights of one charged with crime ought not to, and cannot, operate as a ground for a new trial.' "[1] As Justice COOLEY explained, "[i]t is possible to be so nice in such matters as to render a legal conviction of crime practically impossible; and while the court should see to it on the one hand that no wrong shall be done the defendant, so on the other they are not to set aside a conviction obtained on a fair trial . . . ."[2] "In other words, '[w]e

_____

[1] *People v Pickens*, 446 Mich 298, 313; 521 NW2d 797 (1994) (alteration in original), quoting *People v Wade*, 101 Mich 89, 91; 59 NW 438 (1894).

[2] *Strang v People*, 24 Mich 1, 10 (1871).

require a fair trial, not a perfect trial.' "[3]  "Hence, under Michigan law, counsel's ineffective assistance must be found to have been prejudicial in order to reverse an otherwise valid conviction."[4]

In this case, the majority opinion improperly relies on an ineffective-assistance claim to expand what may qualify as the heat of passion necessary for voluntary manslaughter.[5]  It is entirely speculative to hold that defense counsel performed deficiently by failing to request a jury instruction that the trial court may have declined to issue.

At the *Ginther*[6] hearing on remand from this Court, defendant's trial counsel was questioned as follows by defendant's appellate counsel:

> *Q*. In her testimony, did Miss Yeager describe having a reasonable time to calm down? After the assault, and the ongoing threats?
>
> *A*. Yes.  Well, the rudimentary answer to that question, is, yes, and I'm gonna explain to you, how.
>
> When she gets to the gas station, she's on the phone.
>
> There is at least about six, seven, eight minutes before the second contact is made.
>
> That is where she's made contact with the other witness, he testified, at trial, which is the Samaritan.

---

[3] *Pickens*, 446 Mich at 314 (alteration in original), quoting *People v Beach*, 429 Mich 450, 491; 418 NW2d 861 (1988).

[4] *Pickens*, 446 Mich at 314.

[5] I decline the majority's invitation to weigh in on whether fear or terror may qualify as the heat of passion necessary to support a voluntary manslaughter instruction because doing so would build a strawman argument relating to counsel's performance that might be erroneously relied upon in future cases.

[6] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

2

Where she was able to talk to him.

And, also, too, she was in another whole vehicle, and she was now with another person, and she was in a situation of relative safety.

That truck didn't have to stay there.

That man didn't have to stay there.

She could have ran [sic] into the gas station.

Uh, so, the, uh, she was in another person's vehicle.

She could have said, hey, drive to the Police station.

Drive off.

Okay?

That was the situation.

That was the situation.

She didn't—and then he is, too.

She didn't have to get out of the truck.

Had the trial court viewed the case similarly, it likely would have concluded that there was insufficient evidence to support a voluntary manslaughter instruction. See *People v Pouncey*,[7] (concluding that a voluntary manslaughter instruction was not supported when the defendant "went into the house, a safe harbor" and was not "compelled to go back outside by anyone" before killing the victim); *People v Mendoza*,[8] (explaining that a voluntary manslaughter instruction is unsupported when "a reasonable time has elapsed for the [defendant's] blood to cool and reason to resume its habitual control")

---

[7] *People v Pouncey*, 437 Mich 382, 392; 471 NW2d 346 (1991).

[8] *People v Mendoza*, 468 Mich 527, 535; 664 NW2d 685 (2003).

3

(quotation marks and citation omitted). Furthermore, defense counsel should not be second-guessed on the strategy choice to not seek a manslaughter instruction as the jury would likely be confused because defendant was also pursuing an arguably incompatible self-defense claim. Given the strength of the Chief Justice's dissenting opinion in regard to prejudice, I am not inclined to assume that a request for a jury instruction on voluntary manslaughter would have or should have been granted in this case.

Brian K. Zahra
David F. Viviano